RATHBUN vs. ROSS.

The law does not presume that a person of mature age whose general character has been notoriously bad, up to within a period of five years, has reformed, so as to have acquired an unimpeachable reputation, since that time. Reformation may be shown in answer to the attack, but the law will not presume it in advance.

On the trial of a cause, a party offered to prove the general character of a witness when he resided in the town of A., by a person who knew him there, some five years before the trial. The evidence was objected to, on the ground that the witness sought to be impeached had had a fixed residence in another place, for the last three or four years, and that the evidence should be directed to his present character, at the place of his present residence, about which the impeaching witness did not pretend to know any thing. *Held* that a decision excluding the evidence was clearly erroneous.

A party can not prove, by a witness himself, and by other parol testimony, that the witness has been convicted of a felony and sent to the state prison. The record is the best evidence, in such a case.

Parol evidence to prove that a witness has been an inmate of a state prison, is not admissible; that not being evidence of general character, but of some particular fact, which can never be resorted to by a party attacking the credibility of a witness.

ACTION upon an alleged indorsement by the defendant of a note made by William Pepper, for $300, dated March 14, 1857, payable to the order of Abram Gutchess, sixty days from date, and indorsed by Gutchess, the name of the defendant appearing upon the note as a subsequent indorser. The answer denied each and every allegation in the complaint, and annexed thereto was an affidavit of the defendant, alleging that he never received any notice of demand of payment of the note, or of its non-payment. The action was tried at a circuit court, in Cayuga county, January 5, 1864, before Justice J. C. SMITH and a jury.

David Walters, a witness for the plaintiff, testified he lived n Manlius; was acquainted with Pepper and the defendant; went with Pepper to the defendant's house in March, 1857, to get him to indorse a note, and that he saw the defendant indorse the note. That the witness then lived in Aurelius, not far from Pepper, &c. On cross-examination the witness testified that he lived in Aurelius until four years

the first of last May; lived there nearly twenty years, &c. The defendant's counsel offered to prove, by way of impeachment, that Walters had been convicted in Monroe county of forgery, and been in state prison therefor for five years, which was objected to. The objection was sustained, and the counsel excepted. The defendant then called as a witness David B. McNiel, the agent and warden of the state prison at Auburn, who produced the record of the prison of discharged convicts, and offered to prove that the witness Walters was discharaged from the prison in 1840, after serving five years.

Abram Gutchess, a witness for the defendant, testified that he knew Walters, and had known him since 1856; that Walters had worked for him, and witness knew his character; that he lived within ten miles of witness, or nearer. Question on the part of the defendant. What was his general reputation in 1857? Good or bad? The plaintiff objected on the ground "that he has a fixed residence." Objection sustained, and the defendant's counsel excepted.

The defendant offered to prove, by another witness, that he knew Walters in the Auburn state prison as a convict, for the purpose of impeachment. The plaintiff objected on the ground that there was better evidence, &c. The objection was sustained, and the defendant excepted. The witness further testified, he knew Walters when he lived in Aurelius; had known him up to 1859, and knew his general character. The defendant offered to prove by this witness the general character of Walters from 1851 to 1859. The plaintiff objected, on the ground that Walters had a fixed residence the last three or four years; that the evidence should be as to his present character; and it did not appear the witness had any knowledge of it. Objection sustained, and the defendant excepted.

The jury rendered a verdict for the plaintiff for $440.14. The defendant moved for a new trial, at special term, which was denied. Judgment having been entered, the defendant

appealed from the order denying a new trial, and the judgment, to the general term.

*T. R. Strong,* for the appellant, (among other things,) insisted that the decision excluding testimony by Abram Gutchess, as to the general reputation of Walters, a witness for the plaintiff, being good or bad in 1857 was erroneous, the objection being placed on the ground only that Walters had a fixed residence.   So, as to the decision disallowing testimony by Frederick Lamb, who had been an officer in the state prison at Auburn three years, for the purpose of impeaching the witness, Walters, that he knew Walters in the prison as a convict.   It was not proposed by this evidence to prove the conviction, but only the fact that Walters had been an inmate of the prison with the convicts, which would have been entitled to some weight towards his discredit.   He also insisted that the decision rejecting testimony by the said Lamb as to the general character of Walters from 1851 to 1859, on the ground that Walters had a fixed residence the last three or four years; that evidence of general character should be directed to his present character; and that it did not appear the witness had any knowledge about it, was erroneous.   Lamb testified that he knew Walters when he lived in Aurelius, had known him up to 1859, and knew his general character. It appears from Walters' testimony that he lived in Aurelius some twenty years, and up to 1859.   The ground of exclusion of the testimony by the court must have been that as it related to a period several years back, it would not tend to prove the present character.   Upon principle, as well as authority, the evidence ought to have been received.   If Walters' general character was bad in 1857 and 1859, and previously, it was a fair presumption that it continued to be bad down to the time of the trial.   The defendant was entitled to have the evidence laid before the jury, as bearing upon the question of the witness' character at the time of the trial. The jury would have been warranted by it in concluding in

accordance with such a presumption.   The law presumes
that a fact continuous in its character continues to exist.
(*Walrod* v. *Ball,* 9 *Barb.* 271.   *Cooper* v. *Dedrick,* 22 *id.*
516.   *Smith* v. *Smith,* 4 *Paige,* 432.   *McMahon* v. *Har-*
*rison,* 6 *N. Y. Rep.* 443.)   The following authorities are
directly in point and decisive of the question: *Sleeper* v.
*Van Middlesworth,* (4 *Denio,* 431;) *The People* v. *Abbot,*
(19 *Wend.* 192, 200, 201.)   Assuming that the judge might
exercise a discretion as to the period to which the inquiry as
to character should extend, it was not an arbitrary discretion,
but one of a sound judicial character, subject to be reviewed.
If not of the latter character, he might have restricted the
inquiry to a month, or week, before the trial, and the defend-
ant would have been remediless.   It was clearly reasonable
that the defendant should be permitted to prove, if he could,
that the character of Walters in 1859 and 1857, and previ-
ously, was bad; and if such proof had been made, it is
manifest from experience and observation, that the evidence,
unless overcome by other proof, would have materially im-
paired the credit of Walters, at the time of the trial, and
rendered it worthless.

*Geo. F. Danforth,* for the respondent.   I. The ruling of
the judge, excluding parol evidence to show that Walters
had been a convict in the state prison, for felony, and had
never been restored to citizenship, was correct.   In *New-*
*comb* v. *Griswold,* (24 *N. Y. Rep.* 298,) it was held that a
witness could not even be asked if he had been convicted.
(13 *John.* 82.   14 *id.* 182.   3 *Barb.* 529.   6 *id.* 613.   3 *Barb.*
*Ch.* 325.   8 *East,* 77.   9 *Cowen,* 707.   1 *Greenl. Ev.* §§ 375,
457.)
   II. The refusal to admit proof of Walters' general char-
acter from 1851 to 1859, was not error.   *Greenl.* (*Ev. vol.* 1,
§ 46,) says:   " The regular mode of examining into general
reputation is, to inquire of the witness whether he *knows*
the general reputation of the person in question, *among his*

*neighbors,* and what it *is.* The inquiry *must* be made as to his general reputation where he is *best known.* He must be able to state what is generally said of the witness by those *among whom he dwells* and *ordinarily* he should come from the *neighborhood of him whose character is in question."* In 19 *Wend.* 610, it was held that "As every man is *presumed* innocent and honest, till the *contrary* is shown, we must acknowledge good character in the first instance. Hence the *onus* lies on the other party to disprove it *affirmatively.* The most usual way is by calling witnesses as to his character *in the place where he lives."* Now if the real point of inquiry is as to *present* character, and the law assumes it to be good and requires the *defendant* to destroy this *presumption* by positive *evidence* that the *fact* is otherwise, would proof of character *twenty years ago,* tend to destroy the *legal presumption of present good character?* certainly not, without adopting as a *positive truth,* and *without proof* the idea that a *man once bad is always bad.* Now we do all know from the unmistakable evidence of the senses, that this last presumption is oftentimes cruelly unsound. Why then should the great law of evidence tolerate a presumption at war with its own intrinsic charity, and known to be terribly fallacious. Yet this is the doctrine of *presumed continuance.* But it is said, it is only a presumption which *shifts the onus of proof,* and merely requires proof that this *presumption of continuance* is erroneous, by evidence that the present character is *in fact* good. But this is a distinction without a difference ; because the presumption of continuance is *prima facie* proof, and if not overthrown, becomes *conclusive.* Thus we stand : we have a presumption that a character once bad (no matter how long ago nor where) is always bad, and yet we know that this presumption is oft times sadly wrong, that it is unsound and opens a wide door to trickery and mischief. For example, a plaintiff produces a witness who has a character without reproach where he now lives, yet in years past, his character, at a different place, under dif-

ferent surroundings, and among different neighbors and asso-
ciates, was questionable.   The plaintiff does not know, per-
haps, where the witness formerly lived ; his character is now
good and of course he subpœnas no witnesses on that subject.
He knows too that the talk and stir necessarily attendant on
gathering witnesses to impeach him at the present home
of the witness, would be known to the witness and he would
of course be prepared to sustain himself ; but no effort is
made to impeach his *present* character, nor could it be done
if attempted, and so the plaintiff has no reason to bring wit-
nesses as to character, and has none ; and yet a cunning
defendant comes with witnesses to prove a character bad
(right or wrong) ten or twenty years before, *elsewhere,* and'
by the doctrine of presumed *continuance,* catches the plain-
tiff all *unprepared,* and this too when and where he had no
occasion to be prepared.

But this doctrine of presumed continuance is ill defined
also.   Nowhere is it settled at how brief or remote a period
in the past, this presumption may begin, nor how long it may
run ; nor is it hedged in by any governing rules, nor do we
know whether it applies as well to a hail storm, a fit of sick-
ness, a pestilence, &c. &c. as to any thing else.   It is haz-
ardous because it unnecessarily subjects a party to the risk of
disastrous consequences in a case where it is as easy to prove
the actual fact of *present* character, as that of *past* charac-
ter, and thus ignore a presumption known to be often untrue.
It is *cruel,* because it assumes that not all the motives gen-
erated by the past, present, or future, have availed to redeem
from fault, utterly ignoring that charity, which is the mar-
row of the law, and sadly trenching on the well known prin-
ciple of mutation.   In 2 *Hill,* 609, the Chief Justice says :
" It was said on the argument that when a living witness is
examined on the stand, the impeaching testimony must be
confined to his character at *the time* of his examination.
Such is unquestionably the rule.   The confidence to be
placed in his testimony, depends upon his character *at the*

Rathbun *v.* Ross.

*time* of testifying, and not what it may have been *some years before;* the inquiry should be what his character *now is.*" Now either this is too strong language, or it controverts the doctrine of presumed continuance, as applicable to this kind of question; for if it is true that the whole question of "confidence" depends on what the witness' character "now is" and not what it was "some years before," then what it was some years before is of no consequence, unless as evidence that it is the same now. If it is evidence that it is the same now, then *ex necessitate rei* the confidence to be put in the witness does depend on what his character was years before, because *once* good or bad *always* good or bad, says this presumption; and if this presumption is sound, then the confidence to be put in the witness does depend on what his character was "some years before" *because* of its dependence on what it *now is,* in that what it now is, is determined by what it was some years before.

Again, the doctrine of presumed continuance, if not restricted to questions other than the one in hand, generates an antagonism of presumption, either of which is as good as the other; for instance the law presumes present character to be good, and yet if this doctrine of continuance is sound, the law allows proof of *past* character to create another presumption *hostile* to the first. *Both* are presumptions. Can a rule of evidence be good that travels out of the domain of *fact* so far as to allow one *strong* presumption to be overthrown by a very *weak* presumption. *Greenleaf (Ev. vol.* 1, § 34,) says the legal presumption of innocence is to be regarded as evidence. Is then evidence of the present fact to be met by a naked presumption from a past fact? It seems more plausible to hold that the doctrine of continuance can not apply to those cases where there is a presumption *in esse* before the other presumption can arise. Is not this what Greenleaf means where, volume 1, section 41, he says, "a relation or state of things once proved is presumed to

Rathbun *v.* Ross.

continue until the contrary is shown, or a different presumption is raised from the nature of the subject in question."

For instance, while the law presumes the existence of present character and that it is good, it does not presume the existence of a partnership, the relation of husband and wife, parent and child, &c. &c. Therefore when one of these things is proved, a presumption of continuance does not collide with another and hostile presumption, and we are not driven without chart or compass into a sea of warring presumption. In *Whitney* v. *Slauson*, (30 *Barb.* 276,) the court, per Johnson, J. refused to *presume continuance* of possession in aid of an action of trover.

III. But if the doctrine of presumed continuance is of sound application to a question of this kind, then his honor's ruling was not error, because from what has already been said, it is at least evident that a doctrine so ill defined, unlimited, susceptible of abuse, and intrinsically weak, if not uncharitable, must be controlled by the sound discretion of the judge as enlightened and governed by the lights of each particular case. Now the inquiry was as to Walters' character between 1851 and 1859; in other words it called on the witness to tell what was the general speech of the people among whom Walters lived at that time, in Cayuga county. It had already appeared on the defendant's own showing, that Walters had not lived in Cayuga county since May, 1859, but had all the time lived in Onondaga county, among different people, with new associations and surroundings. Now if the doctrine of continuance is that the same state of things, the same relation continues as it was at first, then of course the presumption would be that the general speech of the people in Cayuga county and the same associations and surroundings continued as to Walters; but this could not be, because we have seen that he left all these things for a new home, new neighbors and associations, thirteen years before 1851, and five years before 1859. In view of these changes, was it not necessarily discretionary for his

honor to limit the inquiry as to character to the general speech of the witness' new neighbors? Did it not already appear that Walters' character was, in the nature of things, a new character, a changed character; similar, perhaps, (whether good or bad,) to his former one, but still a *new* one, because necessarily created by five years' residence among a new people and new surroundings. If there was no call upon the *"foro conscientiæ"* of the judge here, then certainly this doctrine of continuance is literally that what a people where a man *once* lived, said of his then character, is what the same people now say of his *present* character, although he has had no *present* character among them for five years, and also that what the former people said of his *then* character, a different people say of his *present* character.

Again, it was discretionary, because this doctrine of continuance is undefined as to how far back proof of character may go in order to generate the idea of continuance. It is evident, therefore, that there must be a discretion in the judge, in *foro conscientiæ* upon a view of the facts and evidence of the case in hand, to limit the inquiry as to time. That the decision was right is evident from the fact that the inquiry ran as far *back* as 1851, being thirteen years; that there had been a change of residence; the creation of a new character; a present character of five years duration; that it was just as easy to produce witnesses from Onondaga county, to prove that *present* character, as to bring witnesses from distant parts of Cayuga county to prove *past* character, and his testimony was partly confirmed by the plaintiff, and upon the judge's ruling the defendant did not make any further offer.

Again, in 19 *Wendell*, 610, "It is said that the law *presumes* every man's character to be good, and the *onus* of destroying this presumption rests on the attacking party, and he must *disprove* it *affirmatively*," that is to say, he affirms a negative and must prove a negative, (1 *Greenl. Ev.* § 35.)

In 1 *Greenleaf*, (*Ev.* §§ 78, 80, 81,) it is said "he who affirms a negative, it is obvious can hardly give *plenary* proof, and therefore it is considered enough if he offer such evidence as, in the absence of counter testimony, would allow a presumption that his allegation is true." Now this is undoubtedly sound, but it is to be understood in the light of that greater rule of evidence, that the party must give the best evidence in his power. This is a universal rule. In 13 *Pet. U. S. Rep.* 1, it is said : " This rule may not require the strongest possible proof, but is *governed* by the circumstances of the case, and must bear on the issue, and such as *not* to leave it open to the *suspicion* or presumption that any thing left behind and in the power of the other party *might make against him."* (*Also* 13 *Pet.* 352. 1 *Greenl. Ev.* § 84, *note* 2.) Now there is a difference in *quality* in this kind of evidence. It has a primary and secondary nature. This presumption of continuance is a mere inference as to what a *fact is,* from a knowledge that some *other fact* is, or was, so and so, and this inference is justified *solely* by the idea of the usual sequence between the fact known and the fact inferred, unaided by any reasoning. (2 *Wait's Pr.* 535, 539.) This is inferential or circumstantial proof because it is not clear and positive. Where direct evidence is attainable, this evidence is *secondary.*

Now it was as easy for the defendant to get witnesses in Onondaga as Cayuga county, and the former would give us actual *fact,* while the latter could only enable us to start a *presumption,* and the stir caused by subpœnaing witnesses in Onondaga must have been known to the plaintiff, so that he could have subpœnaed counter witnesses, while in the other case the plaintiff would be without witnesses as to character, especially if his witness' character was good. The course of the defendant is certainly open to suspicion, that if he had brought witnesses from Onondaga, he would have proved Walters' character good instead of bad, or that he meant to conceal his intention of impeaching him until too late

Rathbun *v.* Ross.

for the plaintiff to meet it, and then effect it by force of a presumption at war with the real truth and fact, and because of a knowledge of which truth and fact, and the knowledge that no effort would be made to impeach him by his own neighbors, the plaintiff came without witnesses as to character.

Is it not indispensable that in each particular case the judge should have a discretion to determine whether a party may or may not, in the first instance, call to his aid a doubtful *presumption* from the dead *past* instead of the actual *fact* from the living *present*, especially if they have reason to believe that the best evidence is *unnecessarily or purposely* withheld.

*By the Court*, JOHNSON, J. I do not discover any valid objection to the rulings of the judge upon the trial, except to that excluding evidence of the general character of the witness Walters, previous to 1859. The offer was to prove the general character of the witness when he resided in the town of Aurelius, by a person who knew him there from 1851 to 1859. The evidence was objected to on the ground that the witness sought to be impeached had had a fixed residence in another place, for the last three or four years, and that the evidence must be directed to his present character, at the place of his present residence, about which the impeaching witness did not pretend to know any thing. The objection was sustained, and the defendant's counsel excepted. The same question, substantially, was twice raised and the evidence excluded. The decision excluding this evidence was clearly erroneous. The precise point was adjudged in *Sleeper* v. *Van Middlesworth*, (4 *Denio*, 431.) That was the only point in the case, and the judgment was reversed upon the single ground that evidence of the bad character of the witness four years before, in the neighborhood where he then lived, was improperly excluded. The proof was offered to be made by his former neighbors, who knew nothing of his standing or character at the place of his then present residence, where he

had lived four years. That decision is entirely decisive of this case. The same thing substantially was decided in *The People* v. *Abbot*, (19 *Wend.* 192,) though in that case slight evidence of present bad character had been given.

But no evidence of present bad character had been given or offered in the case in 4 *Denio, supra.* In the present case, the witnesses had known the person sought to be impeached, up to within five years of the trial. The law does not presume that a person of mature age, whose general character has been notoriously bad up to within a period of five years, has reformed so as to have acquired an unimpeachable reputation since that time. Reformation may be shown in answer to the attack, but the law will not presume it in advance. The judge decided correctly in regard to the evidence offered, to prove by parol and by the witness himself that he had been convicted of a felony and sent to the state prison. This is settled in *Newcomb* v. *Griswold*, (24 *N. Y. Rep.* 298.) The record is the best evidence, in such a case. The evidence offered of other witnesses, to prove that the witness in question had been an inmate of the state prison for several years, was also properly excluded. This was not evidence of general character, but of some particular fact, which can never be resorted to by a party attacking the credibility of a witness. He is confined to general character.

There must, however, be a new trial, for the error before considered.

Order refusing new trial reversed. New trial granted; costs to abide event.

[MONROE GENERAL TERM, June 4, 1866. *Welles, E. Darwin Smith* and *Johnson*, Justices.]