ERNEST BUSE *vs.* HENRY G. PAGE and others.

May 22, 1884.

On Re-argument, June 20, 1884.

**Deed and Bond for Reconveyance—When a Conditional Sale and when a Mortgage.**—Where A conveys land to B by absolute deed, and B at the same time executes to A a bond or agreement to reconvey the land to A upon payment of a certain sum of money at a time specified, the transaction between the parties, upon this simple state of facts, purports to be, and *prima facie* is, what is called a conditional sale, and not a mortgage. Where a deed absolute and a simultaneous bond or agreement for reconveyance have been held to constitute a mortgage, *other* facts have appeared in addition to the simple facts of a deed and bond, or agreement for reconveyance. Facts showing that a deed upon its face

absolute was really intended as a *security*, show it to be a mortgage; as, for instance, where there is a loan of money by the grantee to the grantor, whether evidenced by the grantor's notes or by other express obligation to repay, or even without any personal obligation of repayment, and the *purpose* of the transaction is the repayment of a sum *loaned*, with or without interest. In such cases the bond or agreement for reconveyance is considered a defeasance, and the transaction a mortgage.

**Same—Intention, how ascertained.**—In determining whether a transaction is a mortgage or conditional sale, the important question is, what was the intention of the parties? Did they intend security or sale? This intention is to be ascertained by looking at the written memorials of the transaction, and its attendant facts and circumstances.

**Witness—Impeachment—Reputation for Veracity.**—There is no inflexible rule confining the reputation (for truth and veracity) which may properly be given in evidence to impeach a witness, to his reputation at or very near the time of the trial at which he testifies; but, as respects such matter of time, it is for the court to receive or reject the proposed impeaching testimony, in the exercise of a sound discretion.

Plaintiff brought this action in April, 1883, in the district court for Otter Tail county, against Henry G. Page, Henry Opperman, John W. Corliss and others, (claiming under defendant Page,) praying (among other things) that an assignment of a sheriff's certificate of mortgage sale by Opperman to Corliss, bearing date March 13, 1875, be declared a mortgage, and for leave to redeem; and that a judgment in a suit brought by defendant Page against Opperman and others be declared void as to Opperman and this plaintiff.

The action was tried by *Collins*, J., who found, among other facts, (not here material,) the following: On February 3, 1873, plaintiff, being owner of certain land in Otter Tail county, described in the complaint, mortgaged it to one Grussendorf, who, on January 26, 1874, assigned to one Martin. On March 14, 1874, the mortgage was duly foreclosed by advertisement, and the land sold for $1,055.25 to Martin, who received and recorded the proper certificate of sale. No redemption from this sale was ever made. On January 30, 1875, Martin, in consideration of payment of the amount due thereon, assigned the certificate to Opperman, who, on March 13, 1875, in consideration of the payment of $675, assigned to defendant Corliss.

The two assignments were recorded on March 13, 1875, on which day Corliss agreed with Opperman to sell and convey the land to him by warranty deed, provided he should pay to Corliss, on or before November 14, 1875, the sum of $740, and also all taxes and assessments against the land due at the time of making such deed; and in case of failure of Opperman to buy and pay for the land at the time mentioned, then Corliss should be discharged from any obligation on the contract or any interest of Opperman in the land. This agreement was duly recorded on the same day. When this agreement was made, the land was worth $1,000, and no more. There was no agreement between the parties to this instrument that the transaction should be in fact a mortgage, or that the land should be held in trust or otherwise as security for the payment of any sum of money, nor did the plaintiff or Opperman ever agree to pay any money whatever in redemption of the certificate, or for a conveyance of the land. No part of the $740 named in the agreement was ever paid.

After the year of redemption from the mortgage sale had expired, and on February 25, 1880, Corliss, being in actual possession, conveyed the land in fee by warranty deed to defendant Page, whose deed was recorded the next day, and who bought and paid valuable consideration for the land, in good faith, and with no knowledge of the nature of the transaction between Opperman and Corliss except as he might have been informed by inspection of the records.

On May 18, 1874, the plaintiff conveyed the land in fee, by warranty deed duly recorded, to one Fred. Buse, who, on April 14, 1883, quitclaimed to plaintiff all his right, title, and interest in the land. On March 22, 1882, Opperman quitclaimed to plaintiff all his right, title, and interest in the land.

On August 1, 1880, the defendant Page brought suit in the district court for Otter Tail county against Opperman and others, for the cancellation of the agreement of March 13, 1875, between Corliss and Opperman, as a cloud upon his title, and for a judgment declaring him the owner of the land and barring the defendants from claiming any interest therein, and on March 15, 1881, he obtained such judgment, none of the defendants having appeared. Opperman being a non-resident, no service upon him was made except by publication.

When the present action was brought, there was on file in the former suit no other affidavit for publication of the summons than a paper in form a sufficient affidavit for that purpose, signed by the plaintiff's attorney therein, and with a jurat complete and sufficient, but not signed or sealed. Shortly after this action was brought, the defendant Page moved in the former action (in which he was plaintiff) for an amendment of the affidavit by adding the signature and seal of the deputy clerk of the court before whom it had been sworn on the day named in the unsigned jurat. The motion was made and granted *ex parte*, on the affidavits of the attorney who signed the affidavit for publication, and of the deputy clerk before whom it had been in fact sworn.

Upon these findings judgment was ordered and entered for defendants, and the plaintiff appealed.

*Canty & Johnson,* for appellant.

*John W. Mason, E. E. Corliss,* and *W. D. Parkinson,* for respondents.

BERRY, J.[1]   Where A conveys land to B by absolute deed, and B at the same time executes to A a bond or agreement conditioned to reconvey the land to A upon payment of a certain sum of money at a time specified, the transaction between the parties, upon this simple state of facts, purports to be, and *prima facie* is, what is called a conditional sale and not a mortgage. Except in Pennsylvania, where a somewhat peculiar doctrine appears to prevail, an examination of the adjudged cases will generally show that where a deed absolute and a simultaneous bond or agreement for reconveyance have been held to constitute a mortgage, *other* facts have appeared in addition to the simple facts of a deed and bond or agreement. *Henley* v. *Hotaling,* 41 Cal. 22; *Haynie* v. *Robertson,* 58 Ala. 37; 1 Jones on Mortgages, § 260 *et seq.* A mortgage is a security for something to be paid or performed; hence, facts showing that a deed upon its face absolute is really intended as a *security,* show it to be a mortgage. Instances of this are where it appears that there is a loan of money by the grantee to the grantor, whether evidenced by the grantor's notes or by other express

---

[1] Dickinson, J., because of illness, took no part in this decision.

obligation, or even without any personal obligation of payment on the part of the grantor; and the purpose of the transaction embodied in the deed and bond or agreement for reconveyance is the repayment of a sum loaned, with or without interest. *Belote* v. *Morrison*, 8 Minn. 62, (87;) *Hill* v. *Edwards*, 11 Minn. 5, (22;) *Holton* v. *Meighen*, 15 Minn. 50, (69;) *Fisk* v. *Stewart*, 24 Minn. 97; *Benton* v. *Nicoll*, Id. 221. And see *Flagg* v. *Mann*, 14 Pick. 467; *Alstin* v. *Cundiff*, 52 Tex. 453. So, also, if the deed was given for purposes of indemnity. *Archambau* v. *Green*, 21 Minn. 520. In such cases the bond or agreement for reconveyance is considered a defeasance, so that the transaction is a mortgage, within the definition given by Chief Justice Shaw in *Bayley* v. *Bailey*, 5 Gray, 505, as a "conveyance of real estate, or some interest therein, defeasible upon the payment of money or the performance of some other condition." In considering whether a transaction by absolute deed, and simultaneous bond or agreement for reconveyance, is a mortgage or a conditional sale, the important question is, what was the *intention* of the parties? Did they intend security or sale? This intention is to be ascertained by looking at the written memorials of the transaction, and its attendant facts and circumstances. *Cornell* v. *Hall*, 22 Mich. 377; *Alstin* v. *Cundiff, supra*; *Smith* v. *Crosby*, 47 Wis. 160; *Henley* v. *Hotaling*, 41 Cal. 22; *Edrington* v. *Harper*, 3 J. J. Marsh. 353; *Hill* v. *Edwards, supra; Holton* v. *Meighen, supra.*

Tried by these principles, the findings of the court that the transaction between Opperman, through whom plaintiff claims, and the defendant John W. Corliss, was a sale and not a mortgage, must be upheld. The testimony on material points was utterly inconsistent and irreconcilable. But there was ample, competent testimony, which the trial judge was at liberty to credit, and which clearly tended to show that there was no loan of money in the case, but a positive and express refusal to make a loan; that the deed to Corliss was not given or accepted as security; that it was, and was intended by both parties to it to be, an absolute conveyance, in pursuance of an absolute sale, and that upon this basis, and this alone, the agreement to sell and convey to Opperman was entered into. To this is to be added the further important consideration that there is nothing upon the

face of the deed or bond to indicate that the transaction was other than an absolute sale, with an agreement for a reconveyance on specified terms, constituting *prima facie* what is known in the books as a conditional sale, as distinguished from a mortgage. What may be the rule as to the admissibility of parol evidence to show that that which appears upon its face to be a mortgage is a conditional sale, we need not in this instance inquire. The fact here was simply that the plaintiff introduced parol evidence for the purpose of showing that an instrument which, according to the views above expressed, *prima facie* evidenced a conditional sale, was a mortgage; and the defendants on their part introduced parol evidence to rebut that which had been introduced by the plaintiff. That it was competent for the defendants to do this is apparent.

The only remaining point made by plaintiff, which we deem it necessary to notice, relates to certain impeaching testimony. Several witnesses for defendants were permitted, over plaintiff's objection, to testify as to the reputation of two of plaintiff's witnesses for truth and veracity, from their knowledge of what that reputation was some four years before the trial. There are authorities holding that impeaching witnesses must speak from their knowledge of the reputation, at the time of the trial, of the witnesses sought to be impeached. *Chance* v. *Indianapolis, etc., Co.,* 32 Ind. 472; *Rawles* v. *State,* 56 Ind. 433; *Mitchell* v. *Commonwealth,* 78 Ky. 219. But the better doctrine, and that supported by the weight of authority, and in our opinion by considerations of practical good sense, is that there is no inflexible rule confining the reputation (for truth and veracity) which may properly be given in evidence to impeach a witness to his reputation at or very near the time of the trial at which he testifies; but that, as respects this matter of time, it is for the court to receive or reject the proposed impeaching testimony, in the exercise of a sound discretion. *Teese* v. *Huntingdon,* 23 How. 2; *Sleeper* v. *Van Middlesworth,* 4 Denio, 431; *Kelly* v. *State,* 61 Ala. 19; *Rathbun* v. *Ross,* 46 Barb. 127; *Snow* v. *Grace,* 29 Ark. 131. There may be cases where it would be held that the trial court abused its discretion, but we perceive no occasion for so holding in the present instance. In several of the cases cited above the lapse of time was as great, or greater,

than in this case. It is to be observed that the impeaching witnesses speak from an acquaintance with the witnesses impeached of several years' standing,—a fact having an important bearing upon the value of their testimony, and upon the question whether the character and reputation of the impeached witnesses would be likely to have changed or not.

These views dispose of the case, and render it unnecessary for us to consider the effect of the judgment received in evidence against plaintiff's objection.

Judgment affirmed.

The appellant having moved for a reargument, the following opinion was filed June 20, 1884:

*By the Court.* This action was brought, (see the pleadings and issues,) tried below, (see settled case,) decided below, (see findings,) argued here, (see briefs,) and decided here, (see opinion,) upon the basis that two *distinct* issues were involved, viz.: (1) Was the transaction between Opperman and Corliss a sale, or a mortgage, *in fact?* (2) Was its character as a sale determined so as to be *res adjudicata* in the former action? Or, as otherwise stated: (1) Was the transaction *in fact* a mortgage or sale? and (2) whether it was or not, did the judgment estop plaintiff from claiming that it was a mortgage? These two issues were kept separate on the trial and in the findings, and in the argument here. There is not a word in either brief to the effect that the findings upon the first issue were anything other than what they purport to be, viz., findings of the facts of the original transaction as they took place, and not of facts which (whether they ever really existed or not) the plaintiff was estopped to deny. The idea that the finding that no security was intended, but a sale with right of repurchase, was influenced by the supposed estoppel of the judgment, or in any way depended upon it, is, so far as the briefs show, an after-thought. It is to be added that defendants' brief expressly makes the point that whether the judgment in the former action is valid or not, the judgment in this action should be af-

firmed upon the finding that the transaction between Corliss and Op-
perman was a sale.

From the foregoing it follows, as remarked in the opinion on file in
this case, that it was unnecessary for this court to consider the effect
of the former judgment.    The motion for a reargument is accord-
ingly denied.