## G. L. COATES v. GEORGE SULAU.

1. WITNESS—*Impeachment—Competent Evidence.* Where the answers of impeaching witnesses show that they understood the questions in a general sense, and the answers also show that they relate to the general reputation of the witness sought to be impeached, the omission of the word "general" from the question will not render the evidence of such witnesses incompetent.

2. REPUTATION *for Truth—Competent Witnesses.* Where a witness sought to be impeached has within a few months changed his residence from one state to another, it is not error to permit witnesses who knew him a long time in his former place of residence to testify as to his reputation for truth and veracity there.

*Error from Wyandotte District Court.*

THE opinion states the facts.

*Junius W. Jenkins,* for plaintiff in error.

*Charles F. Mussey,* and *William H. Pope,* for defendant in error.

Opinion by STRANG, C.: This was an action on a promissory note for $131, alleged to have been given by the defendant below to the plaintiff below in final settlement of a contract for building a house. Action was begun before a justice of the peace. Defendant admitted the giving of the note, but claimed it was not given on final settlement of said contract, but was given before any settlement was had upon said contract, for the purpose of making a payment thereon. And the defendant below further claimed that when he came to

look over his receipts for money paid on said contract, together with some offsets he had against it, he found he had overpaid the plaintiff, including the note sued on, in the sum of $21.50, and that the plaintiff below actually owed him, over and above the amount of the note sued on, the said sum of $21.50. Judgment was rendered by the justice in favor of the defendant below for the sum of $21.50 and costs. Plaintiff appealed to the district court, where the case was tried by the court and a jury at the June term, 1888, resulting in a verdict and judgment for the plaintiff below for the amount of his note, $138.20. Motion for new trial was overruled. Coates brings the case here for review.

The plaintiff in error first complains of the character of the impeaching testimony offered by the plaintiff below, and received in evidence in the case over his objection. He asserts that such evidence was not competent; that the question put to the impeaching witnesses did not call for the general reputation of the defendant below as to truth and veracity. The question would have been better if the word "general" had been used in framing it, but the answers show that each of the several witnesses understood the question as calling for the general reputation of the defendant below. The answers of the several witnesses were much alike, except that some of them added that, in a matter in which Coates had a pecuniary interest, they would not believe him under oath. Each of the witnesses answered substantially as follows: "I am well acquainted with Coates's reputation in this community for truth and veracity." They speak of his reputation in the community. That means in the whole community, and is as general as reputation can be. "Reputation" is what is said of one; "general reputation" is what is said of one by the people in general in the neighborhood or community where he resides, and where, therefore, the people are acquainted with him. We think the evidence sufficiently general in its character. Where the answers show that the questions are understood in a general sense by the witnesses, and the answers themselves are sufficiently general, the fact that the

word "general" is omitted in framing the question will not render the evidence incompetent.

. The plaintiff also alleges that impeaching evidence must be confined to the present character of the witness. Coates lived for many years in Cumminsville, which is now the twenty-fifth ward of Cincinnati, Ohio. He left there and came to Kansas City, Kas., and at the time of the trial had lived there a few months less than a year. The evidence complained of was as to his reputation at his old home, in Cincinnati; and it is objected that it was incompetent for the reason that such evidence must be confined to the present character of the witness; and it is alleged that Coates had no present character at Cincinnati, because he left there several months before. We do not think this position of the plaintiff tenable. The evidence related to Coates's character in the community and among the people where he had lived a long time, and from whom he had been absent but a few months. He had not lived in Kansas City long enough to have a reputation there, and if such evidence is needed, we think it proper to seek it from among his old neighbors, among whom he had lived until recently before the trial. If it could not be got there, it could not be got anywhere until he had lived in a new community long enough to have a reputation there. The fact that a person has moved away from a community in which he has lived a long time, when his change of residence is recent, does not render the evidence of his old neighbors as to his reputation incompetent. There is no arbitrary, iron-clad rule in relation to such evidence. It must depend largely upon the circumstances of the particular case. Sometimes it may be sought some distance away, both in point of time and space.

The plaintiff also says such evidence must be confined to the reputation of the witness "in the neighborhood—his reputation among his neighbors." That is exactly what was done in this case. The impeaching witnesses all lived in the same neighborhood in which Coates lived for years before moving to Kansas. We do not think any substantial error was committed in the admission of the impeaching testimony. The

jury would have been justified in returning the verdict they did without any of the impeaching testimony. It is true Coates says he did not owe the note, "that at the time he executed it, he supposed he owed Sulau the money, but that when he got home and looked up his receipts, he found he did not." This was in Cincinnati; and yet when the first note came due it went to protest, and afterward he made the note sued on to take up the first. After he came to Kansas, he wrote back acknowledging the debt and promising to pay it. These facts are so inconsistent with the claim that he did not owe the note, that the jury were justified in rendering a verdict against him for the amount of the note on his own evidence, taken in connection with his former acts relating to the transaction.

Complaint is made of the admission of the evidence of A. G. Cutler and Charles Stork, who testified in explanation of the written plans and specifications as part of the building contract. They gave no evidence by way of contradiction of anything in the plans and specifications. Their evidence was simply explanatory of the plans and specifications, and was exactly the same kind of evidence that was introduced by the defendant below, by the witness Martin. That the plans and specifications were ambiguous and were subject to explanation, is manifest from the fact that the witness Martin finally admitted he couldn't tell from them how many gables were contemplated thereby. We see no error in connection with this complaint.

It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.