THE STATE VS. KNIGHT.

*June 5—June 18, 1903.*

*Criminal law and practice: Municipal courts: Certifying questions*
*to supreme court: Jurisdiction: Witnesses: Impeachment:*
*Reputation: Remoteness.*

1. Under sec. 2, ch. 49, Laws of 1901 (providing, as to the munici-
   pal court of Dane county, that the general provisions of law
   which may at any time be in force relative to circuit courts,
   and actions and proceedings therein, shall relate also to said
   municipal court, unless inapplicable), it is within the author-
   ity of the municipal court of Dane county to certify questions
   of law to the supreme court, under sec. 4721, Stats. 1898 (pro-
   viding that if upon the trial of any person who shall be con-
   victed in a circuit court any question of law shall arise which,
   in the opinion of the judge, shall be so important or so doubt-
   ful as to require the decision of the supreme court, he shall,
   if the defendant desire it or consent thereto, report the case
   so far as may be necessary to present the question of law
   arising thereon), and that the supreme court has jurisdiction
   under such statutes to act upon such report.
2. Evidence as to the reputation of a witness for truth and verac-
   ity in the vicinity of his prior residence, twenty-two months
   before the trial, is not inadmissible merely on the ground that
   it is too remote.
3. Such evidence is not inadmissible merely because another and
   subsequent domicile has been shown, and that the witness had
   established a reputation therein.
4. The question whether or not specific error in striking out evi-
   dence was prejudicial to the accused is not a proper one for
   certification or answer under sec. 4721, Stats. 1898.

REPORTED from the municipal court of Dane county: AN-
THONY DONOVAN, Judge. *First question answered in the*
*affirmative; second question left unanswered.*

Defendant was tried in January, 1903, in the municipal
court of Dane county, on charge of adultery. The prose-
cuting witness having testified to the act, and the defendant
having denied it, the state, in rebuttal, introduced impeach-
ing evidence of the bad reputation of defendant for truth

and veracity at the village of Oregon, where he resided from about March, 1901, to about June, 1902. Defendant then offered, and the court received, evidence of a witness that he was familiar with defendant's reputation for truth and veracity at the city of Stoughton, where he had resided all his life, up to March, 1901, and that it was good. Thereupon the state moved to strike out that testimony, and the court granted the motion, for the reason that the proper foundation was not laid, and because said witness had stated that he did not know the reputation of the defendant at Oregon, where he had established his last reputation; that the evidence must be confined to reputation of the defendant in the vicinity where he had a last fixed domicile, and had acquired a reputation. Other witnesses, prepared to testify to the same effect, were therefore not sworn. After a verdict of guilty, the municipal judge certified to this court the questions: "(1) Did the court err in striking from the record the testimony of the witness from Stoughton? (2) If so, is such error prejudicial to the defendant, *Thomas S. Knight?*"

For the plaintiff there was a brief by the *Attorney General* and *W. D. Corrigan,* second assistant attorney general, and *F. L. Gilbert,* district attorney, and oral argument by *Mr. Corrigan.*

For the defendant there was a brief by *John A. Aylward* and *J. M. Clancey,* and oral argument by *Mr. Aylward.*

Dodge, J. The first subject debated is whether this court is authorized by the statutes to answer questions of law in criminal cases upon a report from the judge of the municipal court of Dane county, as it is upon the report of a circuit judge by express provision of sec. 4721, Stats. 1898. That section provides:

"If upon the trial of any person who shall be convicted in said circuit court any question of law shall arise which, in the opinion of the judge, shall be so important or so doubtful

as to require the decision of the supreme court, he shall, if the defendant desire it or consent thereto, report the case so far as may be necessary to present the question of law arising therein."

This statute, if applicable to the municipal court of Dane county, or to cases pending therein, is rendered so by sec. 2, ch. 49, Laws of 1901, which provides:

"The general provisions of law which may at any time be in force relative to circuit courts, and actions and proceedings therein, shall relate also to said municipal court, unless inapplicable."

Under an entirely analogous statute relating to the municipal court of Milwaukee, it was decided in *State v. Allison,* 47 Wis. 548, 2 N. W. 1141, that the municipal judge was not authorized to report cases falling within the jurisdiction which he held concurrently with justices of the peace; and as late as *Wendel v. State,* 62 Wis. 302, 22 N. W. 435, it was again declared that the question whether such reports might be made and received, in cases within the jurisdiction held concurrently with circuit courts, was open and undecided. As early as *State v. Witham,* 70 Wis. 473, 35 N. W. 934, however, this court, without question or discussion, received and acted upon such a report from the municipal court of Rock county, and thence onward many cases are found of similar action upon reports from various inferior courts having no authority except statutes similar in character to that governing the municipal court of Dane county. Some of those cases are the following: *State v. Witham,* 70 Wis. 473, 35 N. W. 934; *State v. Whitton,* 72 Wis. 18, 38 N. W. 331; *State v. Cornhauser,* 74 Wis. 42, 41 N. W. 959; *State v. Whitmore,* 75 Wis. 332, 43 N. W. 1133; *State v. S. A. L.* 77 Wis. 467, 46 N. W. 498; *State v. Goodrich,* 84 Wis. 359, 54 N. W. 577; *State v. Eaton,* 85 Wis. 587, 55 N. W. 890; *State v. Wendler,* 94 Wis. 369, 68 N. W. 759; *State v. Sawell,* 107 Wis. 300, 83 N. W. 296. It was not until substan-

tially all of these cases had been decided that ch. 49, Laws
of 1901, was enacted. We cannot doubt, therefore, that this
persistent and long-continued practical construction by the
profession and by the courts of statutes practically identical
in phraseology must be considered as adopted by the legis-
lature in re-enacting in the same words with reference to this
particular municipal court, whatever might have been our
view upon deliberate discussion and consideration of such
statute originally. We conclude that it was within the au-
thority of the municipal court to report this case in compli-
ance with sec. 4721, Stats. 1898, and that we have jurisdic-
tion under that statute to act upon such report.

We therefore proceed to consider the first question certi-
fied—whether "the court erred in striking from the record
the testimony of the witness from Stoughton," which related
to defendant's reputation at that place for truth and veracity.
Doubtless the decision of a trial court as to admissibility of
this and many other classes of evidence, which depends on
the prior establishment of other facts, may involve much of
judicial discretion, to which all due regard should be given
by a reviewing court when it appears to have been exercised.
That consideration can have but little force in the present
instance, however, for the rulings of the trial court make
obvious that he deemed his discretion as to the remoteness or
proximity of the proposed evidence controlled by a strict rule
of law, and excluded the evidence, not because the defend-
ant's reputation existing at Stoughton two years before the
trial was, in his opinion, too remote to have any bearing
upon that defendant's character for truth and veracity, but
because a rule of law rendered it inadmissible if a later resi-
dence and reputation had been acquired elsewhere. Hence
the trial court erred, if no such rule of law exists. To the
question of its existence, we therefore address ourselves.

Of course, the real question of interest to the jury is
whether a witness' character with reference to truthfulness

is good or bad at the time of trial, so that they may judge as to the credit to be given his statements on the witness stand. It is now quite universally recognized that the general reputation of one in the community of his residence is evidence of his character. The reputation receivable in evidence must, of course, be one existing and established before the trial, but how much lapse of time will serve to deprive it of all evidentiary force is quite uncertain, under the authorities. Their tendency is to allow much remoteness in time, on the theory that personal character is a persistent quality, ordinarily changing hardly at all, and never suddenly. In 1 Greenl. Ev. (16th ed.) § 461d, the true rule is said to be "that character [reputation] at any preceding time is admissible, provided it is not too remote in time to have real probative value." Decided cases have declared its admissibility after the lapse of many years—up to ten or even more. *Sleeper v. Van Middlesworth*, 4 Denio, 431; *Rathbun v. Ross*, 46 Barb. 127; *People v. Abbott*, 19 Wend. 192, 201; *Snow v. Grace*, 29 Ark. 131; *Watkins v. State*, 82 Ga. 231, 8 S. E. 875; *Holmes v. Stateler*, 17 Ill. 453; *Buse v. Page*, 32 Minn. 111, 19 N. W. 736, 20 N. W. 95; *Morss v. Palmer*, 15 Pa. St. 51; *Sage v. State*, 127 Ind. 15, 27, 26 N. E. 667. From these and other authorities, we cannot doubt that a general reputation established and existing twenty-two months before is not so remote as to be inadmissible on that ground alone. Nor, indeed, have we any reason to suppose that the trial court would have so held. He merely ruled that the intervention of the subsequent residence, and establishment of a provable reputation there, render the former reputation inadmissible, although not so remote but that it would otherwise have probative force. This could be so only on the ground that the former general reputation is no longer any evidence of the real character of the man. For such view we find no support in any of the cases cited, but, on the other hand, we do find much authority to the contrary. 3 Jones,

Ev. § 862; *Hamilton v. People,* 29 Mich. 173, 187; *Coates v. Sulau,* 46 Kan. 341, 343, 26 Pac. 720; *Sleeper v. Van Middlesworth, supra; People v. Abbott, supra; Rathbun v. Ross, supra; Watkins v. State, supra; Stratton v. State,* 45 Ind. 468; *Memphis & O. R. P. Co. v. McCool,* 83 Ind. 392; *Norwood & B. Co. v. Andrews,* 71 Miss. 641, 16 South. 262; *State v. Lanier,* 79 N. C. 622; *Morss v. Palmer, supra.* In substantially all of these cases the witness had maintained a later residence for as long or longer than had the defendant in Oregon. In many of them evidence had been given of an existing reputation at such later place of residence. In all of them it was held that the general reputation existent in the community of his earlier residence was relevant and admissible to prove the actual character of the witness at the time of his giving testimony. The reasoning in support of this view is unanswerable. "If the date of the earlier residence and surrounding reputation is recent enough that, according to ordinary human experience, the character which was then a part of the man himself is not likely to have changed, proof of that character at that date is material, and the general reputation then existing tends to prove what that character was. It is, of course, true that reputation does not always coincide with real character. Fortuitous circumstances, some unfortunate or suspicious event, persistency in scandal-mongering by some enemy, may give a bad reputation to a good man. This peril is, however, greatest in the neighborhood of least residence and least intimacy of contact and variety of stress in which the man's qualities have been exhibited. It would be strange doctrine, indeed, if a blameless life through boyhood and early manhood could not be considered as against an unfavorable reputation resulting from a few months' residence among strangers, where the witness' true character may as yet not be understood." We are convinced that no such rule as that applied by the trial court ought to exist; that it would obstruct discovery of the

truth far oftener than promote it. This conception of what the law ought to be having the support of all the authorities we have been able to find, we cannot do otherwise than hold a contrary rule erroneous, and advise the trial court that error was committed in striking out and excluding the evidence as to defendant's general reputation for truth and veracity existing at Stoughton at the time of his residence there.

The second question is not a proper one for certification or answer, under sec. 4721, Stats. 1898. It cannot be answered with certainty without examination of the entire record. *State v. Jenkins,* 60 Wis. 599, 19 N. W. 406; *State v. Gross,* 62 Wis. 41, 21 N. W. 802; *State v. Cornhauser,* 74 Wis. 42, 41 N. W. 959. True, the ruling of the court, being specific error, is presumptively prejudicial. Its certification emphasizes that presumption. Nevertheless there is possibility that it might have been cured in the course of the trial—as, for instance, by subsequent admission of the evidence first ruled out. Whether so cured can only be learned from a complete record, including a bill of exceptions. This we have not before us, and could not assume to examine if we had, under the authorities above cited.

*By the Court.*—The first question reported is answered in the affirmative, and the second is left unanswered.