State v. Heiden, 139 Wis. 519.

STATE, Plaintiff, vs. HEIDEN, Defendant.

*April 24—May 11, 1909.*

*Criminal law and practice: Indictment and information: Duplicity: Certified questions: Compliance with statute: Embezzlement: Sufficiency of verdict: Instructions to jury: Ignoring evidence.*

1. It is only when it appears by the indictment itself that two or more distinct acts are involved in the commission of two or more crimes charged that an indictment or a count therein charging two or more offenses is bad for duplicity.
2. An indictment for embezzlement alleging in one count that defendant embezzled a note and the proceeds of two other notes is not bad for duplicity, since all might have been appropriated by a single act.
3. In order to answer a question of law in compliance with the calls of sec. 4721, Stats. (1898), it is necessary that the facts upon which that question rests should be resolved by the trial court and certified; not the evidence, but the ultimate facts, and all of them that are material to determination of the question.
4. Failure to so certify the facts precludes the supreme court from giving answer to the question.
5. For the purpose of invoking answers to questions certified under sec. 4721, Stats. (1898), each question should be a distinct proposition of law and a question of law only, not a question of fact, or of mixed law and fact.
5. Where the proof was identically the same and of equal credibility with reference to the charges contained in two counts of an indictment each charging embezzlement, a verdict of guilty on the first count, without any finding as to the second count, does not upon its face appear repugnant, inconsistent, perverse, or the result of compromise, at least in the absence of the instructions under which the jury were proceeding.
6. A question certified under sec. 4721, Stats. (1898), inquiring

whether the court committed error in refusing three enumerated instructions requested by the defendant, cannot be answered categorically where the answers must differ with the requests, and is in disobedience of the singularity and concreteness of interrogation required.

7. In a prosecution for embezzlement a requested instruction that, in the absence of a definite time fixed by law or regulation in which public funds should be turned over, the defendant had a reasonable time after the termination of his employment or after demand to account and pay over the funds before he could be found guilty, is properly refused where the uncontradicted evidence authorized the jury to find that at various stages the defendant might have formed the intent to appropriate the money.

8. For like reasons a requested instruction that the defendant would not be guilty until a demand or reasonable time after his employment had ceased had expired, unless at the time he received the money he formed the intention to take it, is properly refused.

9. Where the crime of embezzlement is committed no demand is necessary, and no response to such demand by actual payment absolves the offender from the already complete guilt.

REPORTED from the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *First, third, and fifth questions answered in the negative; answers to the other questions refused.*

The defendant having been inspector of the house of correction in Milwaukee county for more than six years prior to December 30, 1903, on that day indictment was found against him containing two counts, the first of which was that on December 31, 1897, he, being charged with the duty of controlling and managing the business affairs of the house of correction subject to laws, rules, and regulations adopted by the board of supervisors, which business included the manufacture of chairs, did on that day, in discharge of his duties, receive and take into possession one certain promissory note of the Hardy Manufacturing Company, dated December 3, 1897, and also a certain fund of $299, proceeds of the pay-

ment of two promissory notes of A. J. Warren, dated October 21, 1897, the property of the county, and that he on said day unlawfully and feloniously embezzled said note and said fund. The second count alleged the same state of facts, except that the defendant on said December 31, 1897, had the custody of the two Warren notes and a fund of $307.30, proceeds of the Hardy Furniture Company note, and did embezzle said notes and said fund. The verdict was guilty under the first count and was silent as to the second count. The court reported that certain questions of law were doubtful and requested their answer by this court under sec. 4721, Stats. (1898). He certifies that there was certain undisputed evidence to the effect that under the regulations of the county board a bookkeeper had been appointed to keep all books and accounts under defendant's supervision; that the custom of business was that when notes were received for goods sold they were retained in the custody of the bookkeeper until near their maturity, when they were handed over to the defendant and by him placed with a certain bank for collection and the proceeds credited to an account kept by such bank in the name of *Fred Heiden, Jr.,* and entered, with proper designation, in an ordinary bank passbook which was retained by defendant; that periodically he handed this passbook to the bookkeeper, whose duty it was therefrom to make credits to the bills receivable account on his books for the amount so collected, charging them presumably to the defendant; that the three notes mentioned in the indictment were received during defendant's incumbency of the office; that they were not credited upon the books of the county by the bookkeeper; that in 1902 a new bookkeeper discovered discrepancy between the total balance of the bills receivable account and the actual notes then on hand and called defendant's attention thereto. He, apparently surprised, asserted that the discrepancy must have arisen before his day without

checking up to ascertain what notes had failed of credit. Thereafter the bookkeeper made an entry in the journal:

"Chair acct. dr. $————.

"To bills receivable, cr. $————.

"Amount charged Bills Receivable for which there were no notes on hand when books were turned over to Inspector *Heiden;* this discrepancy appears to run back for many years."

Defendant resigned his position September 28, 1903, and on December 30, 1903, before the indictment was found, he paid the amount of the three notes to the county treasurer. The questions will be stated in the opinion.

For the plaintiff there was a brief by the *Attorney General,* and oral argument by *F. C. Eschweiler* and *J. E. Messerschmidt.*

For the defendant there was a brief by *W. H. Austin* and *G. G. Gehrz,* and oral argument by *Mr. Gehrz.*

DODGE, J.    1. The first question, "Is the indictment or either of the counts thereof double, and did the court err in denying defendant's objection to the admission of any evidence thereunder?" must be answered in the negative, because it is entirely conceivable that the act of embezzlement of the Hardy Furniture Company note and of the money proceeds of the two Warren notes might be accomplished by a single act so far as anything appears on the face of the indictment. For illustration, that note and that fund of money might have been in a single envelope and been taken by the defendant with the intent and purpose then present to appropriate the whole to his own use. It is only when it appears by the indictment itself that two or more distinct acts are involved in the commission of two or more crimes charged that an indictment or a count therein charging two or more offenses is bad for duplicity. *Cornell v. State,* 104 Wis. 527, 532, 80 N. W. 745; *Vogel v. State,* 138 Wis. 315, 119 N. W. 198.

2. The second question is: "Did the court err in denying defendant's motion, made before the introduction of any evidence under the indictment, repeated at the conclusion of the state's case, and again made and urged when all the evidence was in, to require the state to elect whether it would proceed against the defendant upon the charge of embezzlement of the notes referred to therein or of the proceeds of said notes ?" The motions referred to in this question, or some of them, presented to the trial court for consideration whether the acts claimed to constitute the separate crimes alleged in each count as appeared by the evidence were distinct and separate, so that the evidence which might establish or refute one was different from that with reference to another as explained in the *Cornell Case, supra.* But the trial court has wholly failed to inform us whether the evidence so disclosed or not. In order to answer a question of law in compliance with sec. 4721, Stats. (1898), it is necessary that the facts on which that question rests should be resolved by the trial court and certified to us; not the evidence, but the ultimate facts, and all of them which are material to determination of the question. *State v. Anson,* 20 Wis. 651; *Sigafus v. Porter,* 85 Fed. 689, 29 C. C. A. 391; *McHenry v. Alford,* 168 U. S. 651, 18 Sup. Ct. 242. That has not been done, and we therefore cannot answer this question. Further, the question is not single, but threefold, which constitutes another obstacle to its certification and consideration. Id. In *U. S. v. U. P. R. Co.* 168 U. S. 505, 512, 18 Sup. Ct. 167, certain requisites of a certification under the federal judiciary act of March 3, 1891 (26 U. S. Stats. at Large, 826, ch. 517, U. S. Comp. Stats. 1901, p. 488), are catalogued which are quite as essential to a compliance with sec. 4721:

"Each question had to be a distinct point or proposition of law, clearly stated, so that it could be distinctly answered without regard to the other issues of law in the case; to be a question of law only, and not a question of fact, or of mixed law and fact, and hence could not involve or imply a conclu-

·sion or judgment upon the weight or effect of testimony or facts adduced in the case; and could not embrace the whole ·case, even where its decision turned upon matter of law only."

3. The third question is whether the verdict should be set ·aside because repugnant, perverse, inconsistent, or the result of compromise; the proof being, as the certificate declares, identically the same and of equal credibility with reference to the charges contained in the two counts of the indictment. While this question borders closely on presenting mixed law ·and fact for decision, we think we may venture the opinion that upon the face of the verdict itself repugnancy, inconsistency, or perversity does not affirmatively appear. The verdict, even as to the first count, is of course vague and uncertain by reason of the refusal of the court to require election. It is uncertain whether the jury deemed the taking of the notes the embezzlement, or some of the subsequent acts, such as the receipt of the money or the subsequent application thereof to defendant's own use. They may have found that the taking of the Hardy Furniture Company note and depositing the same with the bank was done with fraudulent intent and based their verdict of guilty as to the first count on that fact without considering or deciding on embezzlement of the money proceeds of the Warren notes, in which event even express finding of not guilty of the crime of embezzling the fund resulting from the collection of the former note or of the taking of the two Warren notes would not be inconsistent. However, we do not view the mere failure to make a finding with reference to the charges contained in the second count tantamount in fact to a declaration of the jury's decision that the defendant was not guilty, although the acceptance of such imperfect verdict may by law result in an acquittal of the second count. The jury have not spoken on that subject expressly, and their silence is not necessarily repugnant to or inconsistent with the declaration of their conclusion as to the charges contained in the first count or some one of them; at least such repugnancy and inconsistency does

not appear in absence of the instructions under which the
jury were proceeding.

4. The fourth question is whether the court erred in ad-
mitting in evidence the original entry quoted in the statement
of facts against the defendant's objection.    We are prevented
from answering this question for the same reasons expressed
with reference to the second.    The degree of defendant's con-
nection or opportunity for connection with or knowledge of
that entry must of course control the decision of the trial
court as to its relevancy to establish a fraudulent purpose in
the defendant to divert to his own use the property mentioned
in the indictment.    The record sent here is barren of any
showing whether defendant ever knew of such entry; if so,
whether he ever repudiated it; and whether, under the rules
controlling the bookkeeping, he had any such contact with the
books of original entry as to make his knowledge of individ-
ual entries therein probable or control over them possible.
These are all questions of fact to be resolved by the trial court
before ruling upon the admissibility of the book entry, and
cannot be certified under this statute.    *State v. Gross,* 62
Wis. 41, 21 N. W. 802; *State v. Juneau,* 88 Wis. 180, 59
N. W. 580.

5. The fifth question is in disobedience of the requirement
of singularity and concreteness.    It inquires whether the
court committed error in refusing three instructions requested
by defendant, numbered 7, 8, and 9.    It cannot be answered
categorically because the answers must differ with the re-
quests.    *State v. Anson,* 20 Wis. 651; *State v. Jenkins,* 60
Wis. 599, 19 N. W. 406.    However, the seventh and ninth
requests we think were properly refused because the instruc-
tions therein were themselves incorrect as statements of law.
The seventh is as follows:

"Unless it clearly appears by the evidence that a definite
time was fixed by law or by some rule or regulation of the
board of supervisors in which moneys collected or received by
the defendant as inspector of the house of correction should

be turned over and delivered to Milwaukee county, then I instruct you that the defendant had a reasonable time after his resignation or the termination of his office or after demand made upon him therefor in which to account for and pay over such moneys before he can be found guilty of the crime charged in this indictment."

It is obvious, in view of the statement of uncontradicted evidence contained in the report, that there are several stages at which the embezzlement might be deemed to have been committed. Thus, when defendant received from the bookkeeper a note, if he had then formed and was then actuated by a fraudulent intent to convert the same to his own use, he doubtless then completely committed embezzlement, and likewise, if he had no such motive, he did not. Again, when he handed the note to the bank with directions, express or implied, to collect and credit the money in his private account, guilt or innocence was dependent on the motive with which he did it, and, if the criminal motive existed, the crime might have been then committed; or, indeed, the jury might have concluded that when the money was actually received by the bank and at defendant's direction placed in his private account, if they also believed the purpose to convert then existed, the crime of embezzlement might at that time have been committed. Still again, if they believed each of the preceding steps had been innocent of any such motive, but, together, had resulted in the county's money being in defendant's possession, the jury might have found that the entry on the books, which in some measure concealed the fact of such possession, was caused by the defendant with a purpose to defraud the county; and finally, if all of these acts were innocent, they might have found that the failure to pay over on retirement from office or on demand was the time of committing the crime, or constituted evidence of a bad motive entertained by defendant at the time he took some of the preceding steps. Thus it obviously is not true that he could

not be found guilty without such demand and the lapse of a reasonable time thereafter to make his accounting. The instruction ignored the possibility of the jury's finding that he completed his embezzlement at some of the prior transactions if there were evidence from which the inference of fraudulent intent might be drawn. If then committed, no demand was necessary, and no response to such demand by actual payment could absolve him from the already complete guilt. *Guenther v. State,* 137 Wis. 183, 118 N. W. 640. The instruction embodied in the ninth request presents the same vice in part as that above discussed. That instruction was to acquit if the jury found that the payment was made by defendant within a reasonable time, unless at the time he received the money he intended fraudulently and unlawfully to keep the same. This ignores the possibility that the jury might find either such fraudulent intent at the time he received or deposited with the bank such notes, or that he was in complicity with the bookkeeper in falsifying the county's books with fraudulent intent.

The eighth request was for the following instruction:

"I charge you that a public officer cannot be legally convicted of an offense such as is charged in this indictment by showing a mere neglect to pay over to the proper county officers funds which may have come into his hands as such officer, unless such failure to pay over continues for an unreasonable length of time after the termination of his office, or unless such officer refuses after demand made to account for and pay the same, or unless a definite time is fixed by law or rule in which the same must be paid over."

This instruction might, under some conditions of evidence, have been proper. But we cannot know what condition of evidence existed. It may be true that the *mere* neglect to pay over a balance by a retiring county officer may be insufficient to justify conviction unless surrounded by circumstances justifying an inference of wrong motive or purpose.

But we do not know that any situation was presented by the evidence to make such a rule of law applicable. Further, the evidence might have been such as to entirely exclude any inference that less than a reasonable time had elapsed before the payment of the money. Even if defendant were ignorant of the fact that these moneys passing into his hands had not been properly credited to the county prior to his retirement from office, we have nothing to inform us when he learned that fact, nor what rules and regulations existed as to his duty to pay or the person to whom he should make payment. Hence it is impossible to answer that the refusal of said eighth request was error or to know that it was not. *State v. Cornhauser,* 74 Wis. 42, 45, 41 N. W. 959; *State v. Knight,* 118 Wis. 473, 95 N. W. 390.

The sixth question is whether the court should grant defendant's motion for a new trial by reason of the presence of one Fred C. Meyer upon the jury who is claimed not to have been the Fred C. Meyer placed upon the jury list by the commissioners. That question is submitted upon all the former description of what transpired on the trial, also upon the indictment, the list of jurors, the verdict of the jury, and the sworn testimony, by affidavit or otherwise, of some ten witnesses. This is not a question of law, but involves the decision of questions of fact and of mixed fact and law, as well as the question of prejudice to the defendant, and is not proper for certification under sec. 4721. *State v. Anson,* 20 Wis. 651; *State v. Gross,* 62 Wis. 41, 21 N. W. 802; *State v. Cornhauser, supra; State v. Juneau,* 88 Wis. 180, 59 N. W. 580; *State v. Knight, supra; Cross v. Evans,* 167 U. S. 60, 17 Sup. Ct. 733; *McHenry v. Alford,* 168 U. S. 651, 18 Sup. Ct. 242.

*By the Court.*—The first and third questions are answered in the negative, also the fifth question so far as it relates to the seventh and ninth requests for instructions. Answers to the other questions are refused.