———————o———————

## STRATTON *v.* THE STATE.

CRIMINAL LAW.—*Removal of Landmark.—Indictment.*—An indictment charged that the defendant, on, etc., "did then and there unlawfully, maliciously, and mischievously remove a certain stone landmark and monument, then and there erected for the purpose of designating the south-west corner of a certain tract of land in said county, to wit," describing the land.

*Held,* that the indictment was sufficient. Under the first division, of sec. 33, 2 G. & H. 468, it is not necessary to charge the intent with which the monument was removed.

WITNESS.—*Proof of Reputation Of.*—While it is the character of the witness at the time he testifies that is material to be shown, it has never been held that the testimony must have reference to that exact time. If some little latitude were not allowed, it would, in many cases, be impossible to impeach the most corrupt witness or sustain the most truthful one.

SAME.—When an attempt had been made to impeach a witness by evidence of statements made out of court in conflict with his testimony on the trial, and evidence had been given of the good character of the witness in his neighborhood at the time of trial, it was not error to admit testimony that his character was also good two years before in a different neighborhood.

MISDEMEANOR.—*Accessories.*—There can be no accessories, as such, in misdemeanors, either before or after the fact; but those who are at all guilty are guilty in the same degree.

CRIMINAL LAW.—*Monument.—Survey.*—Where a monument has been set up as a landmark, not by the proper officer of the government of the United States, at the time of the government surveys, or by authority of a surveyor in accordance with the requirements of the statute, or to mark a boundary fixed by the county surveyor in the presence and by the acquiescence of the parties interested, without the previous statutory formalities, or to mark a boundary or corner recognized and acquiesced in for a sufficient length of time, but has been erected by a surveyor without notice as required by statute, on the land of one who was not present at the survey and did not consent to it, and set as a corner stone at another place than that long recognized and used as the corner, the person on whose land it has been placed will not be liable to prosecution for removing such monument.

From the Henry Circuit Court.

*J. T. Elliott*, for appellant.

*J. C. Denny*, Attorney General, *M. E. Forkner*, and *E. H. Bundy*, for the State.

DOWNEY, J.—This was an indictment against the appellant, in which it is charged that Edward K. Stratton, at said county, on the 30th day of September, A. D. 1871, did then and there unlawfully, maliciously, and mischievously remove a certain stone landmark and monument, then and there erected for the purpose of designating the south-west corner of a certain tract of land in said county, to wit: The south half of the south-east quarter of section twenty-nine, in township seventeen of range ten east, in Henry county, Indiana, said tract of land being then and there the property of Jacob Pickering.

The defendant moved the court to quash the indictment. The motion was overruled. The defendant excepted, and the ruling of the court on the motion is the first error assigned.

The section of the statute on which the indictment is founded is sec. 33, p. 468, 2 G. & H., which section reads as follows:

"If any person shall mischievously remove any monument erected for the purpose of designating the corner or any other point in the boundary of any tract of land, or shall maliciously or mischievously deface or alter the mark upon any monument, made for the purpose of designating any point, course or line in the boundary of any tract of land, or shall wilfully cut down or remove any monument upon which such mark shall be made, with intent to destroy such mark, such person shall be punished by imprisonment in the county jail not exceeding six months, or by fine not exceeding two hundred dollars."

The objection urged against the indictment by counsel for the appellant is thus stated in his brief: "It is evident that the words, 'with intent to destroy such mark,' in the latter part of the section, apply to all the prohibited acts previously

enumerated in defining the offence, and that to constitute an offence under the section, it must be averred in the indictment, that the particular act charged was done with the intent to destroy such landmark. It will be observed that this indictment contains no such averment, and hence it does not charge any offence known to the law. It is radically defective, and the court erred in overruling the motion to quash. The question is a plain and simple one, and does not need elucidation by argument."

The section of the statute may be analyzed, and we may then better understand its meaning. It is susceptible of a division into three parts; first, "if any person shall mischievously remove any monument erected for the purpose of designating the corner or any other point in the boundary of any tract of land;" or, second, "shall maliciously or mischievously deface or alter the mark upon any monument made for the purpose of designating any point, course or line in the boundary of any tract of land;" or, third, "shall wilfully cut down or remove any monument upon which such mark shall be made, with the intent to destroy such mark," etc.

The offence under the first division of the section consists in mischievously removing the monument erected to designate the corner, etc., of the land. This branch of the section has no reference to the mark on the monument. It is not essential that the monument shall have any mark upon it, in order to make its removal criminal. Under the second division of the section, the offence is the maliciously or mischievously defacing or altering the mark upon the monument. Under this clause, it is not essential that the monument shall be removed. It need not be alleged that the act was with the intent to destroy the mark, when the indictment is upon this division. The allegation that the act was done "maliciously or mischievously" implies that the defacing or altering was done with intent, etc.

Under the third division, the offence consists in wilfully cutting down or removing any monument upon which such

mark shall be made, with intent to destroy the mark. In an indictment under this part of the section, the intent to destroy the mark must be alleged, and hence if there be no mark on the monumunt, it is no offence to cut it down or remove it, where the act is not done mischievously as contemplated by the first division of the section. It will be observed that according to the first branch the act must be done mischievously. According to the second branch, it must be done maliciously or mischievously, and according to the third branch, it must be done wilfully, and with intent to destroy the mark.

The indictment in this case is evidently predicated on the first division of the section, although it contains the words unlawfully and maliciously, which are not essential to the description of the offence. We think it is clearly sufficient, without any allegation as to the intent with which the act was done. The word "mischievously" is the only word used by this part of the section to characterize the act. That word is in the indictment. The surplus words do neither good nor harm.

The defendant, having pleaded not guilty, was tried by a jury and found guilty. He moved for a new trial which was refused, and sentence was pronounced upon him. Under the motion for a new trial, several questions are presented for our decision.

It appears by the bill of exceptions that during the progress of said trial and at the proper time, the State, for the purpose of sustaining the character of Eli Johnigan, one of the prosecuting witnesses, who had been impeached by proof of statements made out of court in conflict with his evidence, introduced upon the stand before the jury one Thomas Sears, who, after being sworn, testified that the said Eli Johnigan formerly lived near the witness, in Blue River township in Henry county, but that he removed from that neighborhood about two years ago (two years before the trial) to the neighborhood where he now resides, being about fifteen miles distant; that he, the witness, was acquainted with the general moral character of

said Johnigan in the neighborhood where he resided in Blue River township two years ago, but that he did not know what his general moral character was in the neighborhood in which he has resided for two years last past. The prosecuting attorney then asked the witness to state whether the general moral character of said Johnigan was good or bad in the neighborhood in which he resided in Blue River township, two years ago. To which question, and to the answering thereof by said witness, the defendant at the time objected, because the evidence was irrelevant and incompetent; but the court overruled the objection and permitted the witness to answer said question, who thereupon testified, that said Johnigan's general moral character at the time and place referred to was good.

The court, referring to this evidence, gave the jury the following direction:

" The court allowed evidence to be given as to the general moral character of the witness for several years back; but such evidence was only admitted for the purpose of proving the character of the witness at this time, and you will only consider said evidence so far as, in your judgment, it has a tendency to prove what the general moral character of the witness is at this time, and for that purpose you may consider it in connection with the other evidence given upon the point."

While it is the character of the witness at the time he testifies that is material to be shown, it has never been held that the testimony must have reference to that exact time. It has been decided in several cases, in effect, that the inquiry should relate to the time of the trial, and not to some former period, but no definite time has been or can be fixed, within which the evidence must be confined. If some little latitude were not allowed, it would, in many cases, be impossible to impeach the most corrupt or to sustain the most truthful witness. That the character of a person may suddenly, from having been very good, become very bad, or from having been very bad become suddenly very good, as

was said by the learned judge in *The City of Aurora* v. *Cobb*, 21 Ind. 492, 510, is possible, but such is not so commonly the case as to justify the presumption that there is no permanency in character, whether good or bad. The jury were to determine the credibility of the witness at the time he testified. The question for them was, whether he was at that time a credible witness or not. But it was competent for the parties to give evidence of his character within a reasonable time before the trial. The point to be reached, however, by the proof was, for all that, his standing for veracity at the time he testified. The testimony in such cases will bear more or less strongly upon the present character of the impeached witness, according as it fixes the existence of the good or bad character at a more or less recent period of time. The present character is the point in issue. What the character formerly had been is relevant only "as it blends with the continuous web of life and tinges its present texture." *Willard* v. *Goodenough*, 30 Vt. 393. The period of time within which the inquiry shall be confined is probably one, to some extent at least, in the discretion of the court, the jury being left to weigh the evidence according as it may tend more or less strongly to show the true character of the witness at the time of the trial. In *Walker* v. *The State*, 6 Blackf. 1, which was a case of bastardy, the defendant sought to prove what was the general character of the complainant as to prostitution or virtue previously to and at the time the child was said to have been begotten. The question was objected to, and the objection was sustained. The court said: "It is true, the general moral character of a witness may be inquired into, but the inquiry should be, not what it was at any former period, but what it was at the time of the trial." What time had elapsed between the time the child was begotten and the trial in this case, does not appear. In *King* v. *Kersey*, 2 Ind. 402, the defendant had given evidence of the bad character of two of the plaintiff's witnesses. The plaintiff was allowed to prove, in her rebutting evidence, that their character was

good before the action was brought.    How far back the evidence went does not appear.

In *Rucker* v. *Beaty*, 3 Ind. 70, it was held that the inquiry could not relate to a period five years before the time of the trial.

In *Chance* v. *The Indianapolis, etc., G. R. Co.*, 32 Ind. 472, it is said : " There was an offer to impeach the general character for truth of one White, a witness for the plaintiff. The witness had resided in Minnesota for two years prior to the time he testified.   The impeaching witnesses resided in Hamilton county, in this State, and did not pretend that they were acquainted with the general character of White for truth in the neighborhood where he then resided.   The evidence was properly rejected."

We are referred to no case in this court where a judgment has been reversed, because the inquiry has related to a period too remote from the time of the trial.   In *Rucker* v. *Beaty, supra,* the defendant had already shown the character of the witness to be bad, and afterward offered evidence of his character at a former time.   The court said, in deciding the case : " If he had shown it to be bad at the time of the trial, we do not see that there was any objection to his also showing it to have been always bad, except the time that would have been consumed in the examination.   That time the court was not bound to waste."   In the case under consideration, the State had proved by two witnesses, that the character of Johnigan was good at the time of the trial, and this evidence was not contradicted by any evidence to the contrary.   It was not error to receive the evidence of Sears that the character of Johnigan was good two years before the time of the trial, and in another neighborhood.

At the proper time, after the evidence was closed, the defendant requested the court to instruct the jury as follows : "Under the indictment in this case, if the defendant did not personally remove the stone landmark, or assist therein, and if he was not personally present when it was removed, the jury should find the defendant not guilty."

The court refused to give the instruction asked by the defend-
ant, but, on its own motion, instructed the jury, that if the
defendant "hired or procured the witness, Eli Johnigan, or
any other person, to remove the same, he would be guilty as
charged in the indictment, and the jury should find him
guilty."

The position assumed by counsel for the appellant, on this
point, is thus stated in his brief:

" I concede that if the appellant had been with Johnigan,.
assisting him to haul the stone, and his attention had been
called to the stone, and being personally present and had
known that it was a corner-stone, or landmark, and had
then and there directed Johnigan to take it up and load it
on the wagon, and Johnigan had done so in his presence, the
appellant would have been a principal, and equally guilty
with Johnigan. The offence charged in the indictment is
only a misdemeanor, and I insist that there can be no acces-
sories, either before or after the offence, in misdemeanors, and
if the person so charged is not personally present and in
some way assisting in the offence, or ready to assist in it, so
as thereby to become a principal, he is not guilty of any
offence known to the law, though he may, prior to the act
and away from the place, have hired or directed another per-
son to commit it."

We think the learned counsel is correct in the first branch
of this proposition, that is, that there can be no accessories,.
either before or after the fact, in misdemeanors, but incor-
rect in the last, that is, that if the person so charged is not
present and in some way assisting in the offence, or ready to
assist in it, so as thereby to become a principal, he is not
guilty of any offence known to the law, though he may,
prior to the act and away from the place, have hired or
directed another person to commit it. There are no accessories.
in misdemeanors, but those who are at all guilty are guilty
in the same degree. It is said by Mr. Bishop, that "the
authorities concur, that, in misdemeanor, there are no acces-
sories either in name or in the order of the prosecution. When

a man, therefore, stands in such a relation to a misdemeanor as in felony makes one an accessory before the fact, if what he does is of sufficient magnitude to be noticed by the law, he is to be treated as a principal; the indictment charges him as such, and, unless the pleader chooses, it does not mention that the act was performed by the hand of another; and he may be proceeded against either in advance of the doer, or afterward, or jointly with him." 1 Bishop Crim. Law, sec. 685, and see the cases there cited. Accordingly, an accessory is defined to be, "one who, without being present at the commission of a felonious offence, becomes guilty of such offence, not as a chief actor, but as a participator, as by command, advice," etc., "either before or after the fact or commission." Burrill Law Dict., tit. Accessory. Thus it is seen that accessories exist only in felonious offences. Bouvier says: "In certain crimes, there can be no accesories; all who are concerned are principals, whether they were present or absent at the time of their commission. These are treason, and all offences below the degree of felony." Bouv. Law Dict., tit. Accessory.

The next and only other point made relates to the correctness of the second charge given by the court to the jury. The instruction is as follows: "If the county surveyor of Henry county, acting as such county surveyor, at the request of any of the adjoining land-owners, erected the stone mentioned in the indictment, or directed the same to be erected as a monument to designate the corner of said lands, the defendant would be liable to be indicted and convicted for removing the same, although he may not have been duly and properly notified of the time and place of such survey and the establishment of such corner, although such surveyor may not have proceeded regularly in such survey or the erection of such monument. In such cases, if any land-owner or party interested feel themselves aggrieved by the survey or location of any corner by such surveyor, he has the right to appeal from such survey to the circuit court at any time within three years and have the same corrected or

set aside, if found to be wrong, but would have no right to determine the regularity or legality of such survey for themselves."

The section of the statute, upon which the indictment is founded, speaks of monuments erected for the purpose of designating the corner, or any other point in the boundary of any tract of land. It does not state anything as to the person, officer, or authority, by whom the monument was erected. Suppose the monument has been erected by some third person, not being a surveyor, or by the owner of the land, the corner or line of which is to be marked or designated by it, must it be recognized and regarded as a monument, the removal of which would subject the party removing it to indictment and punishment? We can not think so. Under what circumstances then, must the monument have been erected in order to make the removal of it criminal?

In the first place, we have no doubt the monuments erected by the proper officer of the government of the United States, at the time of the government surveys, would be such a monument. Second. We think a monument erected by the authority of a surveyor, under and in accordance with the statute providing for the election and prescribing certain duties of county surveyor, 1 G. & H. 595, after notice given as prescribed by section 8 of that act, or consent as provided in section 4, would be such a monument. Third. We think when a monument has been erected to mark a boundary fixed by the county surveyor in the presence and by the acquiescence of the parties interested, without such notice or previous consent, as in said section 4, would be a monument coming within the section. *Ashe* v. *Lanham*, 5 Ind. 434. Fourth. No doubt a monument to mark a boundary or corner, which had been recognized and acquiesced in for a sufficient length of time would come within the protection of the statute. *Ball* v. *Cox*, 7 Ind. 453; *Meyers* v. *Johnson*, 15 Ind. 261.

There may be other instances which do not occur to us now.

In this case, it appears that there had been no notice given of the survey as required by the statute, that the defendant was not present at the survey, and did not in any way consent to it. The surveyor testified that he planted the corner-stone at the south-west corner of the land of Pickering, which was the south-west corner of the south-east quarter of section twenty-nine, about two years before the time of the trial. The stone was set in the field of the defendant, some distance from what had been for many years used and recognized as the line and corner. When notice is given according to law of an intended survey, such survey is by the statute made *prima facie* evidence in favor of the corners established and the lines run, but an appeal may be taken from it to the circuit court at any time within three years. We are unwilling to hold that a monument erected under the circumstances disclosed in this case is such a monument as contemplated by the section of the statute on which the indictment in this case is founded.

There is a defect in the evidence on the part of the State. The surveyor was the only witness who attempted to fix the location of the monument. He gives the number of the section in which it was, but not the township and range. We know judicially that there are several sections numbered twenty-nine in Henry county. That the evidence was insufficient to justify the verdict of the jury, was one of the reasons assigned for a new trial, and we think the position was well taken.

The judgment is reversed, and the cause remanded, with instructions to grant a new trial.