## CLINE v. STATE.

1. **WITNESSES:** *Impeachment of: Reputation for morality.*
   A witness cannot be impeached by showing that his reputation for unchastity or other particular immoral habit, renders him unworthy of belief.  The

impeaching testimony cannot go beyond his general reputation for morality.

2. SAME: *Same.*

It is not admissible to inquire whether from a witness' "reputation for truth and veracity, morality and chastity," he is worthy of belief, since an opinion is thus called for as to the effect of chastity, or a want of it, upon the credibility of his testimony.

3. SAME: *Same. Evidence sustaining.*

When the only objection to evidence introduced by the State to sustain the reputation of an assailed witness is, that it relates to a period twenty-five or thirty years before the trial, a judgment of conviction will not be reversed because of its admission, unless it appears that the refusal to exclude it was an abuse of the court's discretion.

4. PRACTICE IN SUPREME COURT: *Instruction assuming undisputed fact.*

A judgment will not be reversed because an instruction to the jury assumes the existence of an undisputed fact.

5. SAME: *Reading law books to jury: Failure to object.*

It is no ground for the reversal of a conviction that the prosecuting attorney read to the jury, in argument, the report of another case, where it does not appear that the report was used in opposition to the court's charge, and no attempt to prevent its use or request for a ruling of the court in relation to it is disclosed by the record.

APPEAL from *Carroll* Circuit Court.

J. M. PITTMAN, Judge.

*J. D. Walker*, for appellant.

1. The court erred in its instructions on justifiable homicide. If there is doubt as to guilt, there must be an acquittal; if there be justification or excuse, there cannot be guilt, Sackett on Inst. to Juries, p. 532; *Sawyer v. People*, 74 Ills.

2. The case of *Duncan v. State*, 49 Ark., not applicable to a case like this, where defendant had been annoyed, threatened and pursued by deceased.

3. Reading law books to juries is certainly bad practice.

4. The oath prescribed by the statute was not adminis-

tered to the jury.    Bish. Cr. Law, 2 vol., notes to "oath;"
3 Minn., 444; 69 N. C., 383; 41 Texas, 496.

5.    The court in its charge to the jury assumed to take
from the jury the fact of the killing.

6.    Testimony as to the reputation of a witness twenty-
five or thirty years before trial not admissible.    It is too re-
mote.

*Dan W. Jones,* Attorney General, for appellee.

The court followed the statutes in regard to testimony im-
peaching and sustaining witnesses.    Mansfield's Digest,
secs. 2902-4; 32 Ark., 220.

It was in the discretion of the court to permit the State's
Attorney to read a law book to the jury.    32 Ark., 550;
34 Id., 737; 36 Id., 292; 38 Id., 304.

The oath administered to the jury was substantially, al-
most literally, that prescribed by statute. Mansfield's Digest,
sec. 2248.

COCKRILL, C. J.

The appellant was indicted for murder.    He was convicted
of murder in the second degree and sentenced to imprison-
ment for five years.    On the trial he proposed to impeach a
material witness for the State through numerous depositions
which had been previously taken for the purpose.    After the
impeaching witnesses had testified that the general character
for morality of the assailed witness was regarded as bad by
his neighbors, they were asked whether from their knowl-
edge of his "reputation for truth and veracity, morality and
chastity" they would believe him on oath.    The court ex-
cluded the testimony given in response to the two last ques-
tions, and we are asked to reverse the judgment on that
ground.

Cline v. State.

In the case of *Hudspeth v. State*, 50 Ark., 534, we ruled, in accordance with the established practice in this State, and what appears to be the general rule elsewhere, [see *Hamilton v. People*, 29 Mich., 186], that it is proper to inquire of an impeaching witness, whether, from his knowledge of the general reputation of the assailed witness among his neighbors, he regards him as worthy of belief on oath. But the rejected offer to discredit the witness in this case was based, not upon his general reputation, but upon his reputation for a particular vice.

1. WITNESSES: Impeachment of.

It is a vexed question, on authority, whether it is the general moral character of a witness or his general reputation for veracity that is the proper subject of judicial inquiry.   A provision of the Code of Civil Proceedure extends the inquiry beyond the general reputation for truth to that of morality in general.   Mans. Dig. sec. 2902, and this provision has been construed by this court to apply to criminal causes. *Majors v. State*, 29 Ark., 112; *Lawson v. State*, 32 Ib., 220; *Anderson v. State*, 34 Ib., 262.   But the statute, in terms, limits the inquiry to the general reputation for immorality, and it was intended only to make a legislative selection between the contending arrays of judicial authority.

The case of *Bakeman v. Rose*, 18 Wend., 146, is commonly cited as a leading case on the side of the more extended inquiry.   But it is there distinctly announced that it is the general character only that can be enquired into—whether it be reputation for untruth or other general immorality such as renders the witness unworthy of belief. P. 148.   The law rejects the conclusion, it is said, that a person guilty of one immoral habit is necessarily disposed to practice all others. The term, general character, is used in this connection in contradistinction to particular facts or parts of character.

Cline v. State.

*Ward v. State*, 28 Ala., 63.  "It certainly is a salutary and even necessary rule of evidence," says Tracy. S., in *Bakeman v. Rose, supra,* "that the credit of a witness should only be impeached by proof of his moral character generally, and not by proof of a particular immoral act, or by proof of a general reputation for a particular immorality, unless that particular immorality be falsehood.   This principle is concurred in by all elementary writers upon evidence, and has been maintained by courts everywhere."  P.  153.   Statutes similar to ours are in force in other states, and they have not been construed to extend the inquiry further than to the general reputation for morality.   *State v. Egan*, 59 Iowa, 636;  *Kilburn v. Mullen*, 22 Ib., 498;  *People v. Beck*, 58 Cal., 212.   Evidence of want of chastity is not, therefore, permissible to impeach the credibility of a witness.   *Bakeman v. Rose, supra ;  Kilburn v. Mullen, supra ;  State v. Larkin*, 11 Nev.,  330;  *Commonwealth v. Churchill*, 11 Metc., 538;  *Gilchrist v. McKee*, 4 Watts, 380; Rapalje Law of Witnesses, sec. 197;  1 Green'l. Ev., sec. 461.

As the naked question whether, from the witness' reputation for chastity, he was or was not  worthy of belief, was inadmissible, it was improper to couple the question with one relating to his reputation for truth and morality, as it would still call for an expression of opinion as to the effect of chastity, or a want of it, upon the credibility of testimony. *Massey v. Farmer's Nat'l Bank*, 104 Ill.,  334-5.   It was not error, therefore, to exclude the evidence.

The State introduced witnesses to sustain the character of the assailed witness.   Some testified that they knew his reputation in the community where he resided at the time of the trial, and that he was worthy of belief;  and others knew that he bore a good reputation in  the community where he

Cline v. State.

resided 25 or 30 years before. This evidence was all objected to by the appellant. There can be no question about its admissibility except as to the limit that was given in going back to so remote a time to establish character. But the exclusion or admission of testimony in such cases rests in the discretion of the court, and where remoteness is the only objection and the circumstances of the case show no abuse of judicial discretion, the rule is to allow the verdict to stand. *Snow v. Grace*, 29 Ark., 131. It may be that the evidence was too remote to shed much light upon the question, but it was relevant and responsive to the collateral issue raised by the appellant, and we cannot see how he was prejudiced by it.

In the course of a somewhat lengthy but well considered charge, the court used this language: "In considering whether the defendant was justified in taking the life of the deceased at the time and in the manner that he did you will consider the circumstances," etc. It is said that this is erroneous because it assumes that the appellant did the killing charged in the indictment. It is not the province of the court to instruct juries upon the facts. It is prohibited by the constitution, and instructions which assume that a controverted fact is proved, though the testimony on one side be slight, is erroneous. We have so held frequently. But where no other conclusion could be arrived at upon the evidence, it is a harmless error, if error at all, to assume the existence of the fact; and a judgment is never reversed for a cause from which no prejudice could have resulted. Hayne New Trial, 121 [b] pp. 344-5; Sackett Instruction to Juries, chap. 1, sec. 17 and cases cited. See *Overton v. Matthews*, 35 Ark., 155.

In this case there was no controversy about the fact of the

*3. Practice in Supreme Court: Instruction assuming undisputed fact.*

killing.   All the witnesses for the State and the defence who knew anything of that fact, testified that the prisoner did it. The fact was never controverted by him at any time.   He testified in his own behalf on the trial, admitting the killing, and undertook to justify it then, as he had done before, upon the plea of self-defence.   The killing was not a disputed fact and the charge affords no grounds for a reversal.   It was so held upon a charge of murder in the case of *Davis v. The People*, 114 Ill., 86; see *Hanrahan v. People*, 9 Ib., 142.

The only other objection urged against the charge is on the question of reasonable doubt.   The court refused no instruction upon this point, but charged the jury to acquit the prisoner if they entertained a reasonable doubt of his guilt, and defined "reasonable doubt" in accordance with our decisions.   There is no error in that regard.

4. SAME: Reading law-books to jury: Failure to object.   A reversal is asked because the prosecuting attorney read to the jury the report of the case of *Duncan v. State*, 49 Ark., 543.   Granting that the obligation to retreat before taking the life of the assailant, which we held rested upon the defendant in that case, did not exist under the facts of this, it does not follow that the judgment should be reversed.   The charge of the court was applicable to the facts of the case under trial; the Duncan case was read, not as controlling this case, but in argument, and there is no suggestion that it was used in opposition to the court's charge, but only by way of illustration; and the record does not disclose that any attempt was made to prevent its use, or that the court was asked to make any ruling in regard to it.   Appellate jurisdiction is limited to the correction of errors committed by the circuit courts, and until the trial court has ruled upon the question, or grossly neglected its duty in not ruling, no error has been committed. The rule is applicable to this class of irregularities.   *Green*

*v. State*, 38 Ark., 318; *L. R. & Ft. S. Rw'y v. Cavaness*, 48 Ib., 106. The court may permit law books to be read to the jury, *Curtis v. State*, 36 Ark., 292, but it is not a practice to be commended. Finding no error in the record the judgment is affirmed.