## LAKE LIGHTING COMPANY v. LEWIS.

[No. 3,558.   Filed May 23, 1902.]

TRIAL.—*Examination of Witnesses.*—Where in an action for personal injuries defendant's attorney asked a medical witness, on cross-examination, whether he observed any symptoms of paralysis in plaintiff, such subject not being mentioned in the examination in chief, it was not error to permit plaintiff's attorney to pursue such inquiry in the reëxamination. *pp. 167–170.*

PLEADING.—*Evidence.—Personal Injuries.*—Allegations in a complaint for personal injuries that the blow caused concussion of the brain, shattered and wrecked plaintiff's nervous system, and caused great pain of body and mind, were sufficiently broad to admit of proof of paralysis and insanity as probable future effects of the injury described. *p. 170.*

WITNESSES.—*Impeachment.—Reputation.—Former Residence of Witness.* —The court may in its discretion admit testimony as to the general reputation of the witness at the place of his residence four

or five years before the trial, where there was evidence before the jury as to the reputation of the witness in the neighborhood in which he resided at the time of the trial. *pp. 171–173.*

From Porter Circuit Court; *J. H. Gillett*, Judge.

Action by Albert Lewis against the Lake Lighting Company for damages for personal injuries. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*C. F. Griffin*, *N. L. Agnew* and *D. E. Kelly*, for appellant.

Black, J.—The appellee recovered damages of the appellant for a personal injury, and the action of the court in overruling the appellant's motion for a new trial is assigned as error.

The complaint showed that in connection with appellant's system of electric lighting maintained in the city of Hammond were lines of poles with cross-bars to which were attached its wires for transmitting electricity; that at the west side of Hohman street, north of its intersection with State street in the central part of the city, near the northwest corner of the intersection of the streets, and in the line of the sidewalk for pedestrians, was one of these poles about fifty feet high with cross-bars at the top to which the wires of the appellant were attached, it being a place constantly resorted to by the general public for the purpose of travel, where a large number of people passed under the cross-arms daily; that, on, etc., in the forenoon, the appellee was standing on the sidewalk of Hohman street near this pole and under the cross-arms thereof, he not being in the employment of the appellant, when one of the appellant's servants was at the top of the pole engaged in the work of the appellant in the line of his duty as a servant of the appellant, and had on and about his person wire and wire-pliers and other tools and appliances ordinarily used by persons so engaged; that while the appellee was so standing he had no knowledge or means of knowing, or reason to believe that

any person was at work at the top of the pole; that at and before said time the appellant carelessly and negligently failed to give any warning or notice of the presence of the servant at the top of the pole, and failed to provide any notice or other means of warning travelers upon the street, or persons lawfully there, of the presence of the servant there, and negligently failed to provide any netting, screen, or anything whatever to prevent tools and appliances which the servant had in his possession, or on his person, from dropping upon or against persons lawfully upon the street and sidewalk; that the appellant and its said servant negligently failed to provide him with a chain belt or other appliances by which he might securely retain said tools and implements; that the appellant's said servant, while so engaged in the line of his duty as such, negligently suffered and permitted a heavy pair of metallic pliers to fall from the top of the pole down a distance of fifty feet upon the head of the appellee; that at the time when it so fell, while the appellee was lawfully so upon the street, he was exercising all due care and caution for his safety and protection; that by reason of said tool falling upon him, he was stunned, knocked down, bruised, lacerated, wounded, cut upon the head and face, and rendered unconscious, and his skull was indented and fractured, and the blow caused concussion of the brain and caused blood poisoning to set in, and his nervous system is shattered and wrecked, and he now suffers, and has suffered before and since the commencement of this suit, great pain of body and mind; that after the injury and by reason thereof his life was despaired of for a long time, and he was confined to his bed for a period of three months, and is wholly unable to do any work of any kind; that by reason of said injury he is unable to do any lifting or to exercise himself in any manner, especially when it is warm, and has continual pain in his head and in the region of the spinal cord; he is highly nervous, is unable to sleep at night, and by reason of said injury his senses of hearing

Lake Lighting Co. *v.* Lewis.

and seeing have been greatly impaired; that said injury is of a permanent nature; that he never will be able physically to perform manual labor; that at and prior to the injury he was a skilled workman in steel, capable of earning, and was earning, etc. There were allegations relating to his necessary consequent expenses, etc., "all to the plaintiff's damage in the sum of," etc.; "that said injury occurred to the plaintiff wholly by reason of the negligent misconduct of defendant as alleged herein and not through any fault on the part of the plaintiff. Wherefore," etc.

In support of the claim that the verdict is not supported by sufficient evidence, and that it is contrary to law, it is contended that the evidence shows contributory negligence on the part of the appellee. The jury by the general verdict found against the appellant upon this question, and the evidence recited by counsel in opposition to the verdict certainly did not require a contrary conclusion as a matter of law. The matter was so plainly within the province of the jury, and the conclusion is so well sustained by the evidence, that we can not regard it as profitable to recite the evidence bearing upon the question.

A physician and surgeon, Doctor Loring, a witness for the appellee, had examined, as he testified, the appellee's wound a week or ten days before the trial. He described the condition observed by him at that time. On cross-examination he was asked: "In this patient, doctor, you found or observed no symptoms of paralysis?" On objection by appellee, on the ground that this was not proper cross-examination, the court held this a proper question, and said: "On redirect we can find out how far that went." The witness answered: "I did not." He was then asked and answered on further cross-examination a number of questions relating to the subject of paralysis; how it would be produced by an injury of that kind; how soon it would be developed; whether a fracture or direct pressure upon the skull continually; at the point of the appellee's injury,

would produce paralysis, etc. In answer to one of these questions the witness stated three different causes resulting from such an injury by which paralysis might be produced. In answer to another of these questions he stated that if the patient had gone for fourteen months,—the period between the injury and the trial,—and all the symptoms of active inflammation had gone, and the wound had apparently healed itself, he would not then expect paralysis to follow.

On reëxamination, counsel for the appellee asked the witness to state in what, if any, other ways paralysis could follow an injury, or from an injury, than the ones the witness had indicated theretofore in his testimony. Appellant's objection to this question having been overruled, the witness answered: "Certain portions of the brain give rise to the motory impulses, and certain portions of the brain give rise to the sensory impulses, containing the motory cells and sensory cells. Now, in adhesion, that destroys these cells, and from these the brain is involved, and involving either nerves of motion or sensation, which may result in paralysis of one or the other functions. Now, pressure of any kind, whether from a tumor, or from inflammation, or a fracture, or anything of the kind, may result in paralysis. Destruction, without pressure in the same way, may result in the same thing. Now I have tried to make that as broad as I can." The court: "That means pressure on either the motor or sensory nerves may result in paralysis?" A. "Yes, sir."

Doctor Pohls, a physician and surgeon who had treated the appellee for the injury in question, testifying as a witness in his behalf, was asked by counsel for the appellee to state "What effect a depression in the skull, such as plaintiff received at the time of his injury, and as you have described on the witness stand, will have upon the brain and nervous system of the plaintiff." The witness was permitted to answer over the appellant's objection, and stated, that "The result would be nervousness and dizziness, probably paraly-

sis, an incoördination of the muscles in walking or anything of that kind, and any least exertion like a jar, or riding in a street car, or on a rough road, would cause pain in the head, radiating from the spot of the injury, and, also, sometimes, loss of memory,—a degeneration of those cells supplying the nervous system." The appellant moved to strike out all the answer after the word "dizziness." The court overruled the motion, referring to the allegations of the complaint that the appellee's nervous system was wrecked, and that there was a concussion of the brain, and saying, that so far as paralysis could be traced to those conditions, that it probably would result, was proper to be considered. This witness was further interrogated for the appellee as to the probabilities of insanity from the injury or effect upon the nervous system, if any. The court, in overruling the appellant's objection, referred to the allegation of the complaint that the appellee's nervous system was shattered and wrecked, and the allegation of permanent injury, and the witness answered: "In my judgment, an injury like that may result in insanity. I do not see how I can answer the question any differently." The court: "It is not what it may result in. The question is, what will it probably result in,—insanity?" A. "Well, it may probably result in insanity; probably." The court overruled the appellant's motion to strike out the answer, and all that part of it relating to the probability of insanity.

It is contended on behalf of the appellant, with reference to the testimony here noticed of the two surgeons, that the appellee was permitted thereby to prove speculative or merely possible damages. On the examination in chief of Doctor Loring he had not been interrogated upon the matter of paralysis. That subject was brought forward specifically by the appellant on the cross-examination, and it was not error to permit the appellee,—as the court announced would be done,—to pursue the inquiry in the reëxamination, wherein the witness in the answer to which objection was

urged merely amplified the causes of paralysis which he had mentioned in answer to the appellant's cross-examining questions.

We are of the opinion that the court did not err in construing the complaint as sufficiently broad to admit of proof of paralysis and insanity as probable future effects of the injury described. The court at different stages in the introduction of the evidence enforced and emphasized the theory that there could be no recovery for merely possible or speculative injurious effects. The jury could not fail to have had this view of the matter clearly before them. It is true that in an action sounding in damages, only such as are the legal result of the facts alleged ought to be allowed or proved; but under a general allegation of damages the plaintiff may prove and recover all those damages that naturally and directly result from the act of which complaint is made. The law implies that such general damages proceed from the act. See *Ohio, etc., R. Co.* v. *Hecht,* 115 Ind. 443; *Heltonville Mfg. Co.* v. *Fields,* 138 Ind. 58; Sutherland on Dam., §1244.

In an action for personal injury the plaintiff is entitled to recover a single compensation for all such consequences of his injury, future as well as past, including reasonable pecuniary satisfaction for loss of both bodily and mental powers. It is well settled by our decisions that in establishing the future physical and mental impairment for which damages may be recovered in such cases, by the testimony of duly qualified witnesses, they may be permitted to give their opinion as to the probability of such disability as a direct and natural effect of the injury in question. In *Louisville, etc., R. Co.* v. *Wood,* 113 Ind. 544, 558, it is said: "The questions asked the medical witnesses were as to the probable results that would follow from an injury described by the witnesses who testified on the trial. We understand it to be well settled that such questions are proper. * * * The cases cited by counsel are directly against

them, for they both concede that it is competent to ask an opinion as to probable results, although it is held that merely speculative opinions are not competent." See *Richmond Gas Co.* v. *Baker,* 146 Ind. 600, 36 L. R. A. 683.

The appellant on the trial had sought to impeach a witness for the appellee, one Levi Hutton,—who resided at East Chicago, Lake county, Indiana, father-in-law of the appellee, who lived with the witness,—by proof of a statement of the witness out of court. The appellee afterward, on the trial, introduced a witness, Solon French, who testified that he lived in Valparaiso and had resided there more than four years before the trial; that before living in that place he had resided for thirty years near the county line in Union township; that he knew Levi Hutton, and at one time lived about two and one-half miles from him, and after that Hutton moved a mile further away; that he had known Hutton between fifteen and twenty years, possibly longer; and that the witness was pretty generally acquainted in that part of the country. The witness was of the impression that Hutton left the neighborhood of the witness about a year or more before the witness came to Valparaiso. The court, then, over objection, permitted the witness to testify that he thought he was acquainted with Hutton's general reputation for truth and veracity in that locality where he resided before he went to East Chicago, and that he thought it good. Another witness, William Freeman, called by the appellee, testified that he lived at Valparaiso, where he had resided for three years, having before that time lived over adjoining Lake county, in Union township; that he had known Levi Hutton some ten or fifteen years; that for three or four years of his first acquaintance Hutton lived two miles and after that perhaps four miles from the witness; that the witness was generally acquainted in that neighborhood where he resided at that time, and had been so acquainted more than forty

years, and at the time of testifying was county assessor. The court then, over objection, permitted the witness to testify that he thought he was acquainted with Hutton's general reputation for truth and veracity at the time he lived down in the country, when he knew Hutton, in that neighborhood where Hutton resided, and that he thought it was good. Before the introduction of this testimony there was evidence that the general reputation for truth and veracity of Hutton was good at East Chicago, where he then resided.

In *Stratton* v. *State*, 45 Ind. 468, it is said that it never has been held that the testimony concerning the character of a witness must have reference to the exact time at which he testified; that no definite time has been fixed or can be fixed within which the evidence must be confined; that the question for the jury relates to his credibility at the time he testified, but it is competent to give evidence of his character within a reasonable time before the trial; that the testimony in such cases will bear more or less strongly upon the present character of the impeached witness, according to the nearness or remoteness of the time to which it relates; and that the period within which the inquiry should be confined is probably, to some extent at least, in the discretion of the court.

There has been some diversity in the decisions as to the latitude allowable in this regard. In the case last cited, the State had introduced evidence that the character of the impeached witness was good at the time of the trial, which it was said was not contradicted, though he had been impeached by evidence of statements made out of court in conflict with his testimony. It was held not error to receive testimony that the character of the impeached witness was good two years before the trial in another neighborhood than that in which he had resided during the last preceding two years. In *Rucker* v. *Beaty*, 3 Ind. 70, where the trial court had excluded testimony offered by the defend-

ant relating to the character of a witness for the plaintiff, at a time five years before the trial, it was said by the court on appeal: "If he showed it to be bad at the time of the trial, we do not see that there was any objection to his also showing it to have been always bad, except the time that would have been consumed in the examination. That time the court was not bound to waste."

In *Louisville, etc., R. Co.* v. *Richardson,* 66 Ind 43, 32 Am. Rep. 94, the trial court had refused to admit evidence of the general character for truth of a witness in New Albany, Indiana, who had resided for about six weeks before the trial at Elizabethtown, Kentucky, where his deposition was taken, he having resided up to that time at New Albany; the ground for refusal being that the residence of the deponent was at Elizabethtown. This, on appeal, was held to be error. See, also, *Memphis, etc., Co.* v. *McCool,* 83 Ind. 392, 43 Am. Rep. 71; *Pape* v. *Wright,* 116 Ind. 502; *Sage* v. *State,* 127 Ind. 15; *Hauk* v. *State,* 148 Ind. 238; *Thrawley* v. *State,* 153 Ind. 375; *Houk* v. *Branson,* 17 Ind. App. 119; Gillett's Ind. and Collat. Ev., §95.

Taking into consideration the discretion lodged in the trial court in the admission or rejection of such evidence, and the fact that there was already evidence on behalf of appellee that the character of the witness was good at the time of the trial in the neighborhood where he then resided; also the long and extensive acquaintance of the witnesses, French and Freeman, in the neighborhood in which they had known the witness Hutton, we think, that, under the authorities, we would not be warranted in interfering with the action of the trial court.

Judgment affirmed.