315 So.2d 531 (1975)
William J. PITTS, Appellant,
v.
STATE of Florida, Appellee.
No. 74-588.
District Court of Appeal of Florida, Second District.
July 2, 1975.
*532 James A. Gardner, Public Defender, Sarasota, and Patrick R. Cunningham, Asst. Public Defender, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Mary Jo M. Gallay, Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
This is an appeal from a conviction of robbery.
At the trial which took place on January 9, 1974, Thomas Zimmer admitted robbing the S & S Cafeteria in Tampa at about 6:30 on the night of June 30, 1973. According to Zimmer, the robbery was planned by the appellant who gave him a loaded revolver and dropped him off near the cafeteria. Appellant was to wait for him and pick him up after the robbery had taken place. However, when Zimmer got back to the automobile, appellant was not in the vehicle. Zimmer said he left the gun and money in the car and moved on. Zimmer was arrested shortly thereafter by a pursuing off-duty policeman and a cafeteria employee. As he was being taken away, Zimmer said he observed the appellant driving off in his red Falcon automobile.
The cashier at the cafeteria identified Zimmer as the man who held her up but said the robbery occurred at approximately 7:30 p.m. The cafeteria employee who helped catch Zimmer did not have him in sight at all times but at one point did notice that he had his hands in a blue Volkswagen. Zimmer's wife testified that appellant admitted his involvement in the robbery to her.
The defense put on three alibi witnesses who testified that they were with appellant at his house during the entire evening of the robbery. Two of them said they arrived between 6:00 p.m. and 7:00 p.m. and the third said he arrived between 7:00 p.m. and 7:30 p.m. The appellant denied any part in the robbery. He said that he didn't leave his house the entire evening the robbery occurred.
During direct examination, Edgar Frock, one of the alibi witnesses, stated that he had known Zimmer well when they were both living in Akron, Ohio, from November 1971 until the summer of 1972. He said he knew Zimmer's reputation for truth and veracity in the community in Akron, but, upon objection, was not permitted to state the nature of that reputation. The objection was sustained on the basis that it was remote because it involved Zimmer's reputation in another state.
There is no doubt that the credibility of a witness can be attacked by proof that his reputation for truth and veracity in the community is bad. Taylor v. State, *533 1939, 139 Fla. 542, 190 So. 691; Nelson v. State, 1930, 99 Fla. 1032, 128 So. 1. See also Fine v. State, 1915, 70 Fla. 412, 70 So. 379; Garner v. State, 1891, 28 Fla. 113, 9 So. 835; Rafuse v. State, Fla.App.1st, 1968, 215 So.2d 71.
With respect to the locale of the person's reputation, Wigmore on Evidence § 930 states:
"... From the point of view of relevancy, place or locality has no bearing on the present principle. The actual qualities of the man himself must be the same in whatever place he is... ."
Likewise, Jones on Evidence § 26:17 says:
"... If the witness to be discredited has changed his domicile, his reputation at both places may be shown within reasonable limits of time. Reputation at a prior place of residence is not excluded merely because another later domicile has been acquired and a reputation there established.
* * * * * *
"Where it appears that the witness had removed from a community some years before the trial, the impeaching testimony of his former neighbors may be received."
In Alford v. State, 1904, 47 Fla. 1, 36 So. 436, our Supreme Court held it was reversible error for the court to refuse to admit testimony as to the character of a state's key witness for truth and veracity by persons who had known him in other communities.
While the court's ruling does not seem to have been predicated on remoteness in time, it is clear that testimony concerning a witness' reputation for truth and veracity less than three years before should not be excluded on that basis. Alford v. State, supra; Jones on Evidence § 26:17. Therefore, it was error to refuse to allow Frock to testify concerning Zimmer's reputation for truth and veracity. But was it reversible error?
An argument can be made that if the jury had believed Frock's alibi testimony they would have found appellant not guilty. Therefore, it didn't make any difference that Frock was not permitted to testify concerning Zimmer's reputation for truth and veracity. See Porter v. Ferguson, 1851, 4 Fla. 102. However, upon closer examination we find the evidence such that the jury could have believed Frock with respect to his alibi testimony and still have found the appellant guilty. Frock said he got to appellant's house and saw the appellant between 7:00 p.m. and 7:30 p.m. According to Zimmer, the robbery took place at 6:30 p.m. It was the cafeteria cashier who estimated the time of robbery to be at 7:30 p.m. Hence, the credibility of Zimmer is all the more important to appellant.
The only evidence tying appellant to this crime is that of Zimmer and his wife. Zimmer was the admitted perpetrator of the robbery. Appellant testified that Zimmer and his wife became angry with him when he refused to put up his house for Zimmer's bond. Under the circumstances, we cannot say that the failure to permit the jury to hear testimony concerning Zimmer's reputation for truth and veracity was harmless.
The judgment is reversed, and the case is remanded for a new trial.
McNULTY, C.J., and HOBSON, J., concur.