**Josephine JOHNSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–980A306.

Court of Appeals of Indiana, Second District.

April 20, 1981.

Harriette Bailey Conn, Public Defender, Kurt A. Young, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Josephine Johnson (Johnson) appeals from a jury conviction of two counts of theft, challenging the admission of impeachment testimony as to her reputation for truthfulness, the trial court's use of a presentence report which referred to her juvenile record,[1] the trial court's furnishing her with a copy of the presentence report which neither articulated the

method used to arrive at the recommended sentence nor recommended a sentence, and the sufficiency of the evidence.[2]

We affirm.

## FACTS

The facts most favorable to the State disclose that at approximately 4:25 P.M. on September 13, 1979, while Julie Pinkerton (Pinkerton) was on duty, Johnson entered Pershing's Garden & Pet Store in Marion. Pinkerton asked if she could help Johnson and Johnson replied that she was "just looking." Johnson walked to the store's back counter. Two minutes later she advanced to the room in which animals were displayed. While Johnson looked at the animals, Pinkerton entered the store's back room to clean rocks from a fish tank. Upon returning to the front of the store, she noticed that Johnson had left. She also discovered that her billfold was missing from her purse, which she kept in an office at the rear of the store. She was certain that the billfold had been in her purse at 3:30.

Pinkerton was also certain that Johnson was the only person in the store that afternoon other than Pinkerton herself. Pinkerton was the only employee on duty. Excluding the three or four minutes during which she cleaned rocks in the back room, Pinkerton did not leave the front of the store and did not see anyone enter through either the front or rear door. Furthermore, both doors were equipped with bells which rang automatically when a customer came into the store. Thus, even while Pinkerton was in the back room, the bells would have alerted her if anyone had entered. Pinkerton heard neither bell that afternoon.

Pinkerton identified Johnson as the person who had come into Pershing's during the afternoon in question. Pinkerton testi-

---

1. Johnson's brief also raises as error the fact that the report mentioned a criminal charge for which she was never tried. Because her motion to correct error does not claim this error, it is waived. Ind.Rules of Procedure, T.R. 59(D).

2. Johnson's motion to correct error claims that the trial court erred in admitting testimony about her prior acts of misconduct and criminal charges. Because Johnson's brief fails to address these errors, they are waived. Ind.Rules of Procedure, A.R. 8.3(A)(7).

fied that Johnson had worn white shorts and a black T-shirt and had carried a black collapsible umbrella and black purse.

On the same day, at approximately 4:40 P.M., Johnson entered Berry's Accents, Unlimited in Marion. Two other customers were in the store. Rhea Miller (Miller), the only employee on duty, emerged from behind the back counter and asked if she could help Johnson. Johnson responded that she was "just looking." At about 4:45 the other two customers left the store. Johnson immediately proceeded to the back counter and began to examine the shower curtains displayed there. She asked Miller for two black or yellow shower curtains of a particular style. Miller went to the stockroom, which was closed off from the main part of the store, and returned one minute later with two yellow shower curtains. Johnson announced that she would prefer the black curtains. Miller agreed to order them and requested Johnson's name, address, phone number, and a down payment. Johnson paused before responding that her name was "Sherri Johnson," her address "318 West 9th," and her phone number "662–9106." Miller recorded the information on a note pad which was introduced into evidence. After indicating that she would return the following day with a down payment, Johnson departed.

Immediately after Johnson left, Miller closed the store for the day, taking her purse from behind the back counter at which Johnson had examined the shower curtains. Several minutes later, she discovered that her billfold was missing from her purse. She was positive that the billfold had been in her purse at 4:30 when the two customers entered. At that point, Miller had been stationed behind the back counter. She testified that she did not leave her position until Johnson entered and that neither customer had approached the counter at any time. She indicated that the store's door is equipped with an electronic bell which rings in the stockroom when a customer enters. The bell did not ring while Miller was in the stockroom. Furthermore, Miller saw no one enter the store after Johnson.

After discovering the disappearance of her billfold, Miller called the telephone number which Johnson had given. Miller was informed that the number was not in service. She then advised the police department of her loss.

At trial, Miller identified Johnson as the customer who had called herself "Sherri Johnson." Miller testified that Johnson had worn light-colored shorts and a dark T-shirt and had carried a partially opened collapsible umbrella and small dark purse.

Johnson testified in her own behalf, denying any wrongdoing. Richard Persinger (Persinger) and Carol Matchett (Matchett) offered rebuttal testimony.

Persinger, principal of Marion High School, testified that he knew Johnson when she was a student four or five years earlier. He said that he was personally aware of her reputation for truth in the school system at that time. When deputy prosecuting attorney Warren Haas (Haas) asked Persinger what that reputation was, Persinger replied that "[w]e had some difficulty with Josephine in several instances. In one case, I can recall where she had been found in possession of money taken from a locker room desk." At that point, John Fihe (Fihe), Johnson's attorney, asked that Persinger's answer be stricken because it referred to specific conduct. In addition, he objected to the reputation testimony as relating to events too remote in time to be relevant. The trial court ruled as follows: "The answer perpounded [sic] by the witness will be striken [sic] and the Jury is instructed to disregard the answer. The objection, however, is overruled, and the witness will answer the question as put to the witness originally." Thereafter, Persinger indicated that Johnson's reputation in the school system for truth was bad.

Matchett, Johnson's physical education teacher at Marion High School, also testified that she knew Johnson's reputation for truth in the school system four or five years prior to trial. When asked what that reputation was, Matchett responded, "[u]h, Johnson did steal some money." Again,

Fihe requested that the answer be stricken and objected to the reputation testimony. And again, the trial court ordered the answer stricken, admonished the jury to disregard it, and overruled the objection. Matchett indicated that Johnson's reputation in the school community for truth was bad.

After Johnson's conviction, the trial court ordered the preparation of a written presentence report. The submitted report, a copy of which appears in the record, referred to Johnson's juvenile record, discussed factors upon which the recommended sentence was based, and recommended that Johnson receive the maximum sentence. Johnson was furnished with a copy of the report in advance of the sentencing hearing, at which she was represented by Fihe.

Johnson was sentenced to two years on each count, to be served concurrently.

### ISSUES

Johnson raises four issues:

1. Did the trial court err by admitting impeachment testimony as to Johnson's reputation for truthfulness in the Marion school system four or five years before trial?

2. Did the trial court err by considering a presentence report which made reference to Johnson's juvenile record?

3. Did the trial court err by providing Johnson with a copy of the presentence report which neither disclosed the method used to arrive at the recommended sentence nor recommended a sentence?

4. Was the evidence sufficient to support Johnson's conviction of theft?

### DECISION

*ISSUE ONE*

*PARTIES' CONTENTIONS*—Johnson claims that the trial court should not have allowed Persinger and Matchett to testify about Johnson's reputation for truth after she took the stand in her own defense. She argues that because the testimony related to her reputation in the Marion school community four or five years before trial, it was too remote to be significant. She also predicates error upon the fact that Persinger and Matchett, in the course of testifying, mentioned acts of misconduct for which no conviction was had, i. e., the locker room theft incident. Finally, she contends that the testimony as to her unfavorable reputation should have been excluded because that reputation may have been acquired as a result of incidents included in her juvenile record.

The State responds that the reputation testimony was not too remote to be relevant, that any impropriety attending the testimony as to the locker room theft was cured when the trial court struck the testimony and admonished the jurors to disregard it, and that Johnson's claim concerning her juvenile record is unsupported by authority.

*CONCLUSION*—The trial court properly admitted Persinger and Matchett's impeachment testimony as to Johnson's reputation for truthfulness.

▮ It is well settled that once a defendant has testified in his own behalf, the prosecution may introduce impeachment testimony as to an unfavorable community reputation for truth. *Morris v. State* (1977), 266 Ind. 473, 364 N.E.2d 132; *Beal v. State* (1879), 68 Ind. 345; *Mershon v. State* (1875), 51 Ind. 14. As a general proposition, reputation testimony should bear on the impeachee's reputation as of the time of trial. *E. g., Bills v. State* (1918), 187 Ind. 721, 119 N.E. 465; *Thrawley v. State* (1899), 153 Ind. 375, 55 N.E. 95. But the Indiana Supreme Court, recognizing that reputation forms gradually and is the consequence of previous conduct, has given trial judges leeway in admitting evidence of an impeachee's "prior" reputation:

[I]t was competent for the parties to give evidence of his character *within a reasonable time before trial.* . . . The period of time within which the inquiry shall be confined is probably one, to some extent at least, *in the discretion of the court, the*

*jury being left to weigh the evidence according as it may tend more or less strongly to show the true character of the witness at the time of the trial.*

*Stratton v. State* (1874), 45 Ind. 468, 473 (emphasis supplied). *Accord, Lake Lighting Co. v. Lewis* (1902), 29 Ind.App. 164, 64 N.E. 35. *See generally* 4 S. Gard, Jones on Evidence § 26:17 (6th ed. 1972); 98 C.J.S. *Witnesses* § 500 (1957).

What is "a reasonable time before trial" varies with the circumstances. Indiana courts have frequently extended the boundaries of reasonableness when the trial court has admitted testimony concerning the impeachee's reputation as of the trial date along with the disputed testimony relating to an earlier period. *E. g., Memphis & Ohio River Packet Co. v. McCool* (1882), 83 Ind. 392 (testimony as to impeachee's reputation 2–3 years before trial not too remote); *Lake Lighting, supra* (4–5 years reasonable); *Houk v. Branson* (1896), 17 Ind.App. 119, 45 N.E. 78 ("several years" reasonable). We find only four opinions reviewing the introduction of "prior" reputation testimony unaccompanied by "present" reputation testimony. All but one involved evidence of an impeachee's reputation a short time prior to trial. *Hauk v. State* (1897), 148 Ind. 238, 46 N.E. 127 (15 months reasonable); *Pape v. Wright* (1889), 116 Ind. 502, 19 N.E. 459 (60 days reasonable); *Gemmill v. State* (1896), 16 Ind.App. 154, 43 N.E. 909 (3 or 4 months reasonable). In the fourth, *Sage v. State* (1891), 127 Ind. 15, 26 N.E. 667, the admission of testimony as to the impeachee's reputation seven years before trial was upheld because he had been imprisoned during the intervening years. The court apparently believed that the impeachee had no "present" reputation.[3]

■ We recognize that in most of the Indiana cases, testimony as to the impeachee's reputation prior to trial has been preceded by testimony concerning his reputation at the time of trial. Nevertheless, we find no Indiana cases—and neither party directs us to any—in which the trial court's admission of "prior" reputation evidence has been found to constitute reversible error. *Cf. Pennsylvania R. Co. v. Ribkee* (1930), 92 Ind.App. 611, 174 N.E. 427 (trial court's *exclusion* of testimony pertaining to impeachee's reputation 4 years before trial upheld). Furthermore, other jurisdictions considering the question have emphasized the trial court's need of discretion to determine whether the testimony sought to be introduced is too remote to be relevant. *E. g., Fajeriak v. State* (Alaska 1968), 439 P.2d 783; *Cline v. State* (1889), 51 Ark. 140, 10 S.W. 225; *State v. Thomas* (1941), 8 Wash.2d 573, 113 P.2d 73. The tendency has been to exclude "prior" reputation testimony only if it "relates to a time or place so remote as to afford no reasonable ground of information as to the present character or reputation of the witness . . . ." S. Gard, *supra* at 211. Thus, courts in the following cases have upheld the admission of "prior" reputation evidence unaccompanied by "present" reputation evidence: *Dodd v. State* (1946), 32 Ala.App. 504, 27 So.2d 259 ("all time anterior to his testimony"); *Pitts v. State* (Fla.Dist.Ct.App.1975), 315 So.2d 531 (3 years); *Watkins v. State* (1889), 82 Ga. 231, 8 S.E. 875 (8 years); *State v. Knight* (1903), 118 Wis. 473, 95 N.W. 390 (2 years).

■ We are aware that a few courts have based the admissibility of "prior" reputation testimony unaccompanied by "present" reputation testimony upon the age of the witness whose testimony is sought to be impeached. For example, in *State v. Thomas, supra,* the Washington Supreme Court upheld the trial court's exclusion of testimony concerning a thirteen-year-old impeachee's reputation two years before trial, saying that

there is a presumption against any sudden change in the character of a person

---

3. Compare cases from other jurisdictions in which the admission of testimony concerning reputation in a prior place of residence was upheld because the impeachee, after leaving the community in question, did not live in any other neighborhood long enough to establish a reputation. *Douglass v. Agne* (1904), 125 Iowa 67, 99 N.W. 550 (3 years); *Keator v. People* (1875), 32 Mich. 484 (4 years).

who has reached the age of maturity.... The implication of the foregoing statement is that testimony of past character is deemed to have probative value in determining present character because an adult person is not likely to undergo any sudden change.

8 Wash.2d at 582, 113 P.2d at 77. Nevertheless, we are unable to conclude as a matter of law that the trial court's admission of Persinger and Matchett's testimony as to Johnson's prior reputation amounted to an abuse of discretion; the fact that the testimony referred to an earlier period affects the weight of the evidence, not the admissibility. *See Stratton, supra.* Moreover, because of the substantial evidence of Johnson's guilt (see Issue Four), we are convinced that any technical error in the admission of the disputed evidence was harmless. *See Whitten v. State* (1975), 263 Ind. 407, 333 N.E.2d 86.

▇ We now turn to Johnson's claim concerning Persinger and Matchett's reference to the locker room episode. Johnson is correct in her assertion that a witness may not be impeached by proof of particular acts of misconduct which have not been the basis for conviction. *Morris supra; Otto v. State* (1980), Ind.App., 398 N.E.2d 716. Here, however, the trial court struck the inadmissible testimony and admonished the jurors to disregard it. It is well settled that an admonishment cures any error in the admission of evidence unless it be shown that the admonishment was insufficient to dispel prejudice. *Cooper v. State* (1977), 265 Ind. 700, 359 N.E.2d 532; *Carmon v. State* (1976), 265 Ind. 1, 349 N.E.2d 167.

▇ Finally, we come to Johnson's argument, based upon *Shelby v. State* (1972), 258 Ind. 439, 281 N.E. 885, that Persinger and Matchett should not have been permitted to testify as to her bad reputation for

truth because that reputation may have been acquired as a result of incidents included in her juvenile record. Johnson's reliance on *Shelby* is misplaced. That case stands for the proposition that a juvenile record cannot be used for impeachment purposes. No attempt was made to impeach Johnson's credibility by means of her juvenile record. We know of no authority—and Johnson directs our attention to none—prohibiting proof of an impeachee's reputation for truth simply because that reputation developed as a result of events comprising a part of the impeachee's juvenile record.

## ISSUES TWO AND THREE

▇ We have not included the parties' contentions concerning the presentence report because these issues are waived. The record does not contain a transcript of the sentencing hearing. Thus, we must conclude that Johnson failed to lodge any objections to the report during the hearing. It is axiomatic that objections not presented to the trial court are not available to reverse a judgment on appeal. *Dudley Sports Co. v. Schmitt* (1972), 151 Ind.App. 217, 279 N.E.2d 266; *Allison v. Boles* (1967), 141 Ind.App. 592, 230 N.E.2d 784.[4]

## ISSUE FOUR

*PARTIES' CONTENTIONS*—Johnson argues that the evidence adduced at trial was insufficient to establish her identity as the thief. She claims that because neither Pinkerton nor Miller actually *saw* her take their billfolds, the evidence shows only her presence at the scene coupled with an opportunity to commit the offense.

The State responds that an abundance of circumstantial evidence presented at trial establishes that Johnson committed the thefts.

*CONCLUSION*—The evidence was sufficient to support Johnson's conviction.

---

4. We observe that this case does not fall within the ambit of *Page v. State,* (1980), Ind., 410 N.E.2d 1304. In that case, the Indiana Supreme Court said that if a trial court *increases* the basic sentence without making a record of its reasons for doing so, the reviewing court should remand the cause "with instructions that the trial court enter his findings, if any, supporting the enhanced sentence or, in the alternative, reduce Defendant's sentence to the basic term ...." *Id.* at 410 N.E.2d at 1308. Here, the trial court imposed the basic sentence of two years on each count. *See* Ind.Code § 35–50–2–7. Furthermore, the sentences are to be served concurrently.

In reviewing the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Jones v. State* (1978), 268 Ind. 640, 377 N.E.2d 1349; *Poindexter v. State* (1978), 268 Ind. 167, 374 N.E.2d 509. Contrary to Johnson's assertion, when an element of the offense has been proved by circumstantial evidence, we do not have to find that that evidence excludes every reasonable hypothesis of innocence: "We, on appeal, examine such evidence not to determine its adequacy to overcome every reasonable hypothesis of innocence but to determine whether an inference may be reasonably drawn therefrom tending to support the finding of the trier of facts." *Finger v. State* (1973), 260 Ind. 148, 293 N.E.2d 25 (citation omitted). When there is substantial evidence of probative value supporting the verdict, the conviction will not be set aside. *Jones, supra; Poindexter, supra.*

Johnson correctly states that evidence demonstrating only an opportunity to commit the offense or the defendant's presence at the scene is insufficient to support a verdict. *Manlove v. State* (1968), 250 Ind. 70, 232 N.E.2d 874; *Smithers v. State* (1979), Ind.App., 385 N.E.2d 466. Here, however, sufficient evidence was presented at trial to establish the element of identity. The jury could reasonably conclude from the testimony of Pinkerton and Miller that only one person—the young woman they described—had access to their billfolds on the afternoon in question. Furthermore, both Pinkerton and Miller positively identified Johnson as that young woman and offered virtually identical descriptions of her attire.

For the foregoing reasons, the judgment of conviction is affirmed.

SHIELDS and SULLIVAN, JJ., concur.